THE GAINESVILLE, HENRIETTA & WESTERN RAILWAY COMPANY v. J. P. HALL.

No. 6445.

1. **Damages to Property—Constitutional Law.**—Under the constitutional provision (article 1, section 17) that "no person's property shall be taken, damaged, or de-·stroyed for or applied to a public use without adequate compensation being made, unless by consent of such person," a land owner whose property is injured by the construction of· a railway and running trains thereon is entitled to damages, although the railway be not upon his land nor any of his property be taken.

2. **Damages—Definition.**—Where by the construction of any works there is a physical interference with any right, public or private, which the owners or occupiers ·of property are by law entitled to make use of in connection with such property, and which gives an additional market value to such property apart from the uses to which

any particular owner might put it, there is a title to compensation if by reason of such. interference the property as property is lessened in value. Metropolitan Board v. Mc-- Carthy, Law Rep., 7 H. L., 243.

3. **Evidence—Opinion.**—A question, "to what amount, if any, is your property· depreciated in market value by reason of the construction and operation of the defend- ant's railroad, taking into consideration the physical disturbances to said property only, if any, such as noise, smoke, noxious vapors, and vibrations, and excluding from your· consideration all damages and inconveniences sustained in common with the commu- nity at large," was asked the plaintiff as witness. *Held*, that objections to it upon the· ground that it called for the opinion of the witness upon a matter involving a mixed, question of law and fact should have been sustained.

4. **Same—Practice.**—In answer to an improper question a witness gave facts to· which he could testify. *Held*, the error in overruling objection to such question is not, material.

APPEAL from Cooke. Tried below before Hon. D. E. Barrett, Special. District Judge.

The opinion states the case.

*R. C. Foster* and *A. E. Wilkinson*, for appellant.—1. The court erred' in admitting in evidence the testimony of defendant's witnesses as to the· amount of depreciation in the market value of plaintiff's property from the construction of the road, over objection of defendant. Railway v.. Brand, 7 Best & Smith, 1; Railway v. Ogilvie, 2 Macq., 229; Rickett v.. Railway, Law Rep., 2 H. L., 175; Smith v. City of Boston, 7 Cush., 254; East St. Louis v. O'Flynn, 10 N. E. Rep., 395; Littler v. Lincoln, 106, Ill., 353; Walker v. Railway, 103 Mass., 10.

2. The court erred in refusing the instruction requested by defendant.. [See opinion.] Railway v. Street Railway, 64 Texas, 84; Brand v. Rail- way, 7 Best & Smith, 1; Railway v. Walker's Trustees, 35 Moak's Eng.. Rep., 177–235; Railway v. Lippencott, 9 Atl. Rep., 871; Shrunk v. Nav.. Co., 14 Serg. & R., 71; Bridge Co. v. Geisse, 35 N. J. L., 558; Pierce on Rys., 206–209; Presbrey v. Railway, 103 Mass., 1; Rickett v. Railway, Law Rep., 2 H. L., 175; Railway v. Ogilvie, 2 Macq., 229; East St. Louis v. O'Flynn, 10 N. E. Rep., 395; Shawneetown v. Mason, 82 Ill., 337; Littler v. Lincoln, 105 Ill., 353.

Many other authorities not directly in point may have such bearing on the question as to deserve examination and discussion, and are here cited for that purpose. Railway v. Odum, 53 Texas, 351; Railway v. Eddins, 60 Texas, 659; Railway v. Fuller, 63 Texas, 467; Haldeman v. Bruckhart, 45 Pa. St., 514; Mifflin v. Railway, 16 Pa. St., 194; Rorer on Rys., 2; Ed- mundson v. Railway, 23 Am. and Eng. Ry. Cases, 428; Railway v. Yes- ser, 8 Pa. St., 375; Green v. Reading, 36 Am. Dec., 128; McCarthy v. Met. Bd. of Works, 5 Moak, 259, 260; Penny v. Railway, 7 El. & B., 660; Duke of Buccleuch v. Met. Bd. of Works, 2 Moak's Rep., 448; Hopkins. v. Railway, 20 Moak's Rep., 295; Lyon v. Fishmonger's Co., 17 Moak's Rep., 51; Walker v. Railway, 103 Mass., 10; Proprs. of Locks v. Railway,.

10 Cush., 385; 1 Suth. on Dam., 3–5; Cool. Const. Lim., 384; Week's Dam. Inj., ch. 1; Cool. on Torts, 62; Rochette v. Railway, 17 Am. and Eng. Ry. Cases, 192; Pierce on Rys., 2.

3. The court erred in its charge to the jury in instructing them that plaintiff was entitled to recover as damages the amount of depreciation in the market value of his premises by reason of the construction and operation of defendant's railroad along the side of plaintiff's premises.

*C. C. Potter* and *Stuart, Bailey & Harris,* for appellee.—1. If the construction and operation of the railroad damaged appellee's property, then he had a right to recover, notwithstanding none of his property was taken or destroyed, especially if the damage were peculiar to himself. Railway v. Odum, 53 Texas, 351; Railway v. Eddins, 60 Texas, 656; Railway v. Fuller, 63 Texas, 467; 2 Wills. Ct. App. C. C., 663.

2. If the appellant so constructed and operated its road as to destroy the value of appellee's property or so as to disturb or interrupt him in the use and occupation of the same, it is liable therefor in damages. Railway v. Baptist Church, 108 U. S., 317; Pumpelly v. Canal Co., 13 Wall., 558; 2 Wood's Ry. Law, 919.

GAINES, ASSOCIATE JUSTICE.—This action was brought by appellee against the appellant corporation to recover damages to certain real estate alleged to have been caused by the construction of the defendant's railroad and the operation of its trains. The plaintiff's property consists of a lot in the suburbs of the city of Gainesville, upon which he resides with his family, and has a dwelling house and other improvements appropriate to a place of residence. The dwelling house stands 26 feet from the south boundary line of the lot. The defendant company took no part of plaintiff's land, but constructed its road parallel to such line at a distance from it of about 37 feet. The damages were claimed by reason of the vibration, noise, smoke, noxious vapors, and cinders incident to the running of trains over the road.

The court charged the jury, in effect, to find for the plaintiff if his property had been damaged by the construction and operation of defendant's road, provided such damage resulted from the vibration, smoke, noxious vapors, and the noise of passing trains; and that they should not take into consideration any damage plaintiff had suffered in common with the community generally. The defendant asked the court to give the following charge, which was refused:

"The mere construction and operation of the railroad of defendant upon land adjoining plaintiff's premises, and in the proper and usual manner in which railroads are built and operated, was not an unlawful act, nor could it be denominated a nuisance; and the inconvenience to plaintiff or the owner of the premises from such vibration, noise, and

smoke as were incident to the ordinary operation of the railroad by running from four to six trains per day past plaintiff's premises does not give him a cause of action for damages or depreciation in the value of his premises occasioned thereby. You are therefore instructed to return a verdict for the defendant."

The giving and the refusal of these instructions, respectively, present the fundamental question in this case, and involves the construction of that portion of our present Constitution which provides that "no person's property shall be taken, damaged, or destroyed for or applied to a public use without adequate compensation being made, unless by consent of such person." Art. 1, sec. 17.

The precise question made by the facts of this case is one of the first impression in this court. In Gulf, Colorado & Santa Fe Railway v. Fuller, 63 Texas, 467, damages were allowed the plaintiff for an injury to his property resulting from the construction and operation of the defendant's railroad along a street in front of his lots. The plaintiff having an easement in the street peculiarly essential to the full enjoyment of his property, the court held that the appropriation of the street was a taking within the meaning of the Constitution. But the court also say: "If, however, there has been no taking of the property of the appellee within the meaning of the Constitution, there can be no doubt that it has been damaged, if the evidence offered to support the averments of the petition be true. The word 'damaged' is evidently used in the sense in which the word 'injured' is ordinarily understood. By damage is meant 'every loss or diminution of what is a man's own occasioned by the fault of another,' whether this results directly to the thing owned or be but an interference with the right which the owner has to the legal and proper use of his own. If by the construction of a railway or other public work an injury peculiar to a given property be inflicted upon it, or its owner be deprived of its legal and proper use or of any right therein or thereto—that is, if an injury not suffered by that particular property or right in common with other property or rights in the same community or section by reason of the general fact that the public work exists be inflicted, then such property may be said to be damaged."

In the Gulf, Colorado & Santa Fe Railway v. Eddins, 60 Texas, 656, the same question was decided in the same way. The cases cited differ from the case before us in the respect that in each of them the street in front of the property damaged was appropriated, while in this the road was not constructed along or over any public highway adjacent to the plaintiff's lot. We think the language quoted from the opinion in the Fuller case lays down the true rule. The use of the disjunctive conjunction in the provision of the Constitution under consideration indicates clearly that it was not necessary that there should be a taking to entitle

the owner of property to compensation for any special damage that might result to it from the construction of a public work.

In Railway v. Meadows, 73 Texas, 32, this subject came up for consideration, and the court say: "If a railroad company condemned or otherwise acquired for its purposes a right of way over land, and in constructing its road did an act injurious to an adjacent or neighboring proprietor, for which if done by the original owner he would have been responsible at common law, the company should be held liable to compensate the proprietor so injured. We do not understand that it was intended to give an action against those constructing public works for acts which if done by persons in pursuit of a private enterprise would not have been actionable."

There is high authority for holding that the charter of a railroad company, even in the absence of a statutory or constitutional law allowing compensation for incidental damage, does not exempt it from suits by persons whose property is injuriously affected by its works, although it be properly constructed and carefully operated—at least in cases where in pursuance of its charter the works of the corporation could have been so located as to avoid the injury. Railway v. Baptist Church, 108 U. S., 317.

The doctrine as above qualified may be sustainable, but the great weight of authority is to the effect that in the absence of constitutional restrictions the legislative grant legalizes all acts done in strict pursuance of the power conferred, and that persons whose property has been damaged but not taken must suffer the loss. If the power does not confer authority to do the act despite the damage, it would be the right of an owner whose property is injuriously affected by the operation of a railroad to enjoin such operation as a nuisance, and thus defeat the grant. We think that the insertion of the words "damaged or destroyed" in the provision of the Constitution under consideration was at all events intended to obviate any question of exemption from liability to the owner for property injuriously affected by a public work, and to provide a remedy for any damage which in such cases the Legislature might authorize to be inflicted. It is sufficient for the determination of this case to say that it was certainly intended that the Legislature should not authorize a corporation to do an act for a public use which if done by an individual without legislative sanction would be actionable, and at the same time exempt it from liability to respond in damages to the owner whose property had been injured. Such was the opinion expressed in Railway v. Meadows, previously cited.

We are then brought to the inquiry whether or not the carrying on of any business by a natural person upon his own land which, by reason of the noise, smoke, and vibration caused by the operation of powerful machinery, materially diminished the enjoyment of the property of another

and rendered it less desirable as a residence and depreciated its market value, is a nuisance at common law.

The doctrine announced in Burditt v. Swenson, 17 Texas, 489, leads inevitably to the conclusion that it is. In that case the court quoted Blackstone, who says: "If one does any * * * act in itself lawful which being done in that place necessarily tends to the damage of another's property, it is a nuisance." That a nuisance may be created by smoke, noise, noxious vapors, or other physical disturbances of the enjoyment of property is a proposition in accordance with sound principles, and is well supported by authority. Railway v. Baptist Church, *supra;* Wood on Nuis., sec. 611, and cases cited; Railway v. Esterle, 13 Bush, 667; Railway v. McComb, 60 Me., 290.

There was evidence in this case tending to show that by reason of the noise, smoke, and vibration produced by the operation of the defendant's road the plaintiff's property had been greatly diminished in value. The following is the rule laid down by an eminent English judge as applicable to cases like this: "When by the construction of any works there is a physical interference with any right, public or private, which the owners or occupiers of property are by law entitled to make use of in connection with such property, and which gives an additional market value to such property apart from the uses to which any particular owner or occupier might put it, there is a title to compensation if by reason of such interference the property as property is lessened in value." Met. Board v. McCarthy, Law Rep., 7 H. L., 243. The charge of the court was in accordance with these principles, and was not erroneous. The charge requested was based upon contrary principles, and was properly refused.

We deem it proper before leaving this subject to comment briefly upon the case of Hammersmith Railway v. Brand, Law Reports, 4 House of Lords, 171, upon which appellant seems mainly to rely for a reversal of the judgment. In its decision a great amount of labor and a great wealth of learning was expended. The plaintiff's claim in that case was precisely like the claim in this. The Court of Queen's Bench held that the plaintiff was not entitled to recover. Brand v. Railway, Law Rep., 1 Q. B., 130. This judgment was reversed in the Exchequer Chamber (Law Rep., 2 Q. B., —), but upon final appeal to the House of Lords was sustained. Four of the five judges who were cited to advise the lords were of the opinion that the plaintiff was entitled to recover, and in that opinion one of the law lords concurred. Two of the law lords held the contrary opinion, and the House gave judgment accordingly. The important fact, however, is that the decision of the case turned upon the construction of the acts of Parliament which allowed compensation to owners "when lands were taken or injuriously affected" by the construction of public works. The question was whether compensation was intended to be allowed only for damages occurring from the construction of the works,

or whether it included also such damages as resulted from the operation of the trains after the works had been constructed. The damages in the case were clearly of the latter character, and each of the judges who gave an opinion against the right of compensation placed it distinctly upon the ground that the acts of Parliament commonly called "The Land Clauses Act" and "The Railway Clauses Act" gave compensation only for such damages as resulted from the construction of the railroad, and not from the operation of its trains. The decision of the case was made to depend purely upon a matter of verbal construction. All the judges conceded that the plaintiff's property had been injuriously affected, "and that if the language of the statute had been broad enough to embrace damages resulting from the operation of the works the plaintiff would have been entitled to recover."

In the case of McCarthy v. Metropolitan Board, above cited, the damages claimed resulted from the construction of the works, and the right of recovery was maintained in the Common Pleas, in the Exchequer Chamber, and in the House of Lords. Law Rep., 7 C. P., 508; S. C., Law Rep., 8 C. P., 191; Law Rep., 7 H. L., 243. The question was again considered and the doctrine of the case last cited affirmed in Railway v. Walker's Trustees, Law Reports, 7 Appealed Cases, 259.

There is no such difficulty under the provision of our Constitution as was presented in the construction of the English statutes. The language "No person's property shall be taken, damaged, or destroyed for or applied to a public use without adequate compensation being made" is sufficiently comprehensive to include damages resulting from the operation of public works as well as those which are inflicted by their construction merely. The property in this case was damaged for a public use by the operation of the railroad, and the damage comes as clearly within the provision of the Constitution as damages which result immediately from the construction of the road. The property is subjected to a perpetual servitude for the benefit of the public, and the owner is entitled to his compensation for his damage. The following American cases bear upon the question we have been considering and support the conclusion we have announced: Bridge Co. v. Geisse, 35 N. J. L., 558; Chicago v. Taylor, 125 U. S., 161; Rigney v. Chicago, 102 Ill., 64; Reardon v. San Francisco, 66 Cal., 492; Railway v. Ayers, 106 Ill., 511; Railway v. Williamson, 45 Ark., 429.

During the progress of the trial the following question was propounded to plaintiff on his behalf, while being examined as a witness, as well as to his other witnesses: "To what amount, if any, is your property depreciated in market value by reason of the construction and operation of defendant's railroad, taking into consideration the physical disturbances to said property only, if any, such as noise, smoke, noxious vapors, and vibrations, and excluding from your consideration all damages and inconveniences sustained in common with the community at large?"

The question was objected to by the defendant on the ground that it called for the opinion of the witnesses upon a matter involving a mixed question of law and fact. We think that the question was improper and that the objection should have been sustained. But in so far as the answer of the plaintiff was concerned no harm resulted to the defendant. He did not give a direct response to the question, but answered that the market value of the place was almost totally destroyed; that without a railroad it would be worth at a low estimate $4000, and its value was decreased from the causes enumerated from one-half to three-fourths of that amount. The result was the same as if the witness had been asked the value of the property before the railroad was built and afterwards, and the cause of the depreciation in value, if any, and had answered it was worth before the construction $4000, but since the construction was not worth more than $1000 or $2000, and the cause of the decrease was the noise, smoke, and vibration caused by the moving trains. Neither the bill of exceptions nor the statement of facts shows the answers of the other witnesses to the question, and without knowing what the answers were we can not say whether the defendant was prejudiced or not. They may have answered that in their opinion there was no damage.

We find no reversible error in the record, and the judgment is affirmed.

*Affirmed.*

Delivered June 24, 1890.

Motion for rehearing refused at Tyler Term, October 21, 1890.