**CITY OF CEDAR HILL, Texas, Appellant,**

v.

**Mrs. Elizabeth WHEELER, Appellee.**

No. 15490.

Court of Civil Appeals of Texas.

Dallas.

April 24, 1959.

Rehearing Denied June 19, 1959.

Warwick H. Jenkins, Waxahachie, and Nathan Rachael, Cedar Hill, for appellant.

Richard F. Loomis, Jr., Dallas, for appellee.

YOUNG, Justice.

This is a condemnation suit brought by the City of Cedar Hill, a small Municipality in southern part of Dallas County; and involved the taking of 21.48 acres of appellee's land to be used for a sewage treatment plant, together with 4.98 acres in form of a 50 foot strip for an access road to the plant; the site being located in the northwest corner of a tract containing 878.-91 acres of land which is bisected almost in exact center by the Dallas-Ellis County line. On trial to a jury, market value of the approximately 26 acres taken was fixed at $4,690 and damages to the remaining 852 acres at $17,042.20. The sum of $5,796 had been deposited by plaintiff in registry of court as amount of the Commissioner's award; and after credit of this sum, a balance of judgment was rendered against the City for $15,936.20 followed by this appeal.

The court's charge in definition of market value and form of issues given followed State v. Carpenter, 126 Tex. 604, 89 S.W.2d 194, 979. The jury questions and answers were as follows: "Issue No. 1. From a preponderance of the evidence what do you find was the market value of the strip of land condemned by the plaintiff (City of Cedar Hill, Texas) for a Sewage Treatment Plant and for road purposes at the time it was condemened, (21 June 1957) considered as severed land? Answer in dollars and cents. Answer: $4,690.00.

Issue No. 2. From a preponderance of the evidence what do you find was the market value of defendant's (Mrs. Elizabeth Wheeler) tract of land, exclusive of the strip of land condemned, immediately before the strip was taken (21 June 1957) for a Sewage Treatment Plant and for road purposes? Answer in dollars and cents. Answer: $149,119.25. Issue No. 3 Excluding increase in value, if any, and decrease in value, if any, by reason of benefits or injuries received by defendant (Mrs. Elizabeth Wheeler) in common with the community generally and peculiar to her and connected with her ownership, use and enjoyment of the particular tract of land across which the strip of land has been condemned, and taking into consideration the uses to which the strip condemned is to be subjected, what do you find from a preponderance of the evidence was the market value of the remainder of defendant's (Mrs. Elizabeth Wheeler) tract of land immediately after the taking (21 June 1957) of the strip condemned for a Sewage Treatment Plant and for road purpose? Answer in dollars and cents. Answer: $132,077.05."

Appellant's initial points attack above jury answer to Issue 3 on ground of no legally competent evidence to support such finding of damage to the remainder; challenging the testimony of the landowner's sole witness Currin as based on hearsay and wholly insufficient as a predicate for any opinion on market value or damage to said land. More specifically, error is further alleged, (5) "in instructing the jury not to consider the testimony that defendant through her agent listed the property in question at $150,000.00"; (6) "in refusing to admit the testimony that defendant through her agent requested that the sewage disposal plant be located on her property;" (7) "in refusing to admit the testimony that defendant through her agent placed the road where it was in fact located;" (8) "in excluding the testimony of Gerald Wilburn Gorman as to his opinion of the fair market value of the defendant's land prior to the date of taking"; (9) im-

proper argument of defense counsel; and (10) excessive verdict as result of errors just above listed.

Layout of the entire tract may best be shown by the following plat: (See Exhibit 1). It is seen to be irregular in shape, es-

(Exhibit 1)

pecially on northwest and west sides. The site condemned was triangular in form, apex to north with outlet road shown as running Southwest to another corner then on in same direction to a further corner where it joins old Highway 67. The entire acreage is under long time lease, south part of some 275 acres, a dairy farm, at $900 per year; balance on 50-50 rental basis for crops, stock, or pasture, save a portion reserved to the landowner for her cattle. We are not clear from the record with respect to public roads bounding the property, but the Joe Wilson Road appears to lay on the northeast and east sides, none on the west side until Tar Road is reached, one-fourth mile away. Cedar Hill lies something more than a mile to the north of defendant's plant site. The taking was agreed upon as of June 21, 1957.

Condemnee's witness Ben Currin testified that the value of the remaining land of 852 acres (before the taking) was $350 per acre, or $298,375; valuing the 26 acres taken at $9,275; with balance of land after the taking at $75 per acre, or $63,957.50. We here quote the testimony of this witness on rebuttal:

"What did you take into consideration in arriving at the value of the property after the taking, Mr. Currin? A. I took into consideration a number of facts, what the property could be used for in relation to what it had been used for, what it would be possible to do with the property if the entire operation was changed, whether the addition of any improvements such as the proposed plant would increase or decrease the valuation of it, whether the road or proposed road as it was to be put through there would segregate any portion of the property or I think separate is a better word, whether the proposed road would benefit the improvements as they existed and a hypothetical damage that would be done from a market price.

"Mr. Allen: We object to the witness' statement of hypothetical dam-

age. That is speculative, if I ever heard it.

"The Court: I think that is speculative.

"Mr. Jenkins: We reurge our objection to the answer because of the reasons previously stated to the question, that is, that it is repetition, cumulative, self-serving, and not in rebuttal to anything that has been brought out in the case in chief of the plaintiff, City of Cedar Hill.

"The Court: Overrule the objection. You may answer.

"Q. (By Mr. Loomis) What are the factors? A. There is a difference * * *

"The Court: Just a minute, Mr. Witness. State what factors you used; don't give us dissertations on any one of them. State what the factors were that you used. A. The difference between market price and market valuation. Market valuation being an appraisal for property for taxes, or estate or condemnation proceedings, and market price being what the market * * * what the property would sell for if you had a prospective purchaser and whether or not that prospective price would be affected by the erection of the proposed improvements or improvements that have been placed there.

"Q. That is all. Thank you, Mr. Currin."

Touching the damage issue, Mr. Currin on examination in chief has merely pointed out that the access road cut through "the finest oat field out there."

Appellant's three witnesses on market value of the property in question testified as follows: Roy Eastus valued the land condemned (26 acres) at $3,225; the 852 acres before taking at $175 per acre, and $180 per acre after the taking; the remainder receiving a benefit by reason of the

**240**

access road, it giving the landowner an outlet on that side of the tract. Also that the highest and best use of the property was for dairy farm, ranch and pasture. Dan Morton valued the 26 acres of land condemned at $125 per acre; the remainder before taking at $100 per acre and after taking at $100 per acre. Martin Clark's valuation of the 852 acres before taking was $150 per acre, and $150 per acre after taking; value of the 26 acres condemned was $3,850. Neither of these witnesses viewed placement of the Sewage Treatment Plant as having any appreciable effect on the value of the remainder tract. According to the jury answers, value of the 852 acres tract before taking of the 26 acres was approximately $175 per acre, and $155 per acre after severance—a damage or depreciation to the entire remainder of some $20 per acre.

■ Appellant chiefly complains of Issue No. 3 and the jury finding of damage to the remainder of plaintiff's property. It is argued that the Issue is raised, if at all, in the testimony of the witness Currin, who testified to nothing that concretely demonstrated the Sewage Treatment Plant as decreasing the market value of the tract from $350 to $75 per acre; and likewise of no evidence to show that the Sewage Treatment Plant had affected the value of her remaining land adversely to the extent of more than $17,000 as the jury found. Appellant's position here is well stated in its brief from which we quote: "It is plaintiff's contention that the burden rested on the defendant to show, when testifying as to the damages to the remainder, the effect of the damage upon various portions of the tract, the nature of the damage and the relationship of the damage to market value. The only place the testimony of the defendant even attempted to do this was in the rebuttal testimony. However even there these requirements are not met; all that is stated is some mere guideposts that the witness for the defendant used in evaluating the land. Nowhere did his testimony show that such guideposts, in being applied to these specific facts, indicated that there was any damage. The transition was never made from the statement of the vague general tests to the demonstration of the exact nature of the damage in this specific case, and its effect upon the various portions of the tract and the relationship of this effect to market value. This transition is required if the testimony is to be legally sufficient to sustain any finding of damages."

Tennessee Gas & Transmission Co. v. Zirjacks, Tex.Civ.App., 244 S.W.2d 837 is then cited where a strip 50 feet wide was condemned for purpose of a gas pipe line to run diagonally across Zirjacks' 174 acres; the testimony in support of jury verdict coming from a witness who stated in effect that before the taking the land's market value was $75 per acre and after taking was only about $60. The San Antonio Court through Justice Norvell reversed and remanded, holding: "The judgment must fall for the primary reason that the evidence does not support the findings. We have carefully examined the statement of facts and find no specific testimony detailing in what ways the laying of the pipe line (thirty inches in diameter) twenty-four inches under the surface across the property within the fifty-foot strip would affect the value of the land lying outside the fifty-foot strip. There is no showing that a decline in market value, if any, would be uniform throughout that portion of the 174.5 acres not included in the strip, i. e., that lands remote from the strip would suffer the same as that adjacent to it. The jury based the damages upon a per acreage basis and must have determined that each acre was depreciated in value to the same extent, or the damage to the tract as a whole was computed and then reduced to an acreage basis. *One claiming damages to land must show the nature of the damage, the effect upon various portions of the tract and the relationship of the same to market value.*

A mere conclusion as to market value is insufficient for this purpose." (Emphasis ours.)

In our opinion, the above emphasized requirement of proof in cases of condemnation is here lacking with the result that this cause must likewise be reversed and remanded.

■ But if we be mistaken in the conclusion just reached, then we think reversible error appears in the court's exclusion of testimony as reflected in points six and seven. Gerald Wilburn Gorman was defendant's son-in-law, living on the farm and looking after it in her behalf; it being stipulated on the trial that he was the legal representative in all things of Mrs. Wheeler, a feme sole and widow, who "is ill and not able to attend court at this time." On examination by counsel he had testified to never acting with reference to the property except under orders and authority of Mrs. Wheeler; and with respect to the instant proceedings, that any proposals to the City would have been made with her authority. When questioned on whether in such representative capacity he had ever requested the Mayor of Cedar Hill to locate the Sewage Disposal plant on the Wheeler property, he had answered "No". Likewise to the question of whether he had asked Rector, City Engineer of Cedar Hill, to be allowed to locate the access road across the tract to plant site, the Court sustained objections; stating "we have only one issue in this case and that is the question of value and damages, and I do not think his asking to put the road and whether it was granted to him or not, has anything to do with that."

Later J. C. Potter, Mayor of Cedar Hill at time the sewage plant was planned and located was questioned by plaintiff's counsel as to whether Mr. Gorman had asked that the plant be located on the Wheeler property, and objection thereto was sustained; Mr. Potter testifying outside presence of the jury to the effect that Gorman had contacted him on behalf of Mrs. Wheeler, requesting that the plant be so located. Similarly excluded by the court from the jury's consideration was the affirmative answer of Rector, plaintiff's City Engineer, to the question "Now Mr. Rector, state whether or not this road was located where it is on account of Mr. Gorman's request."

Manifestly the two items of evidence thus excluded by the court had material bearing on Issue No. 3. For if, initially, this defendant was in anywise favorable to location of the plant on the property, such was in conflict with her present claim of substantial damages resulting to the balance of her land. So also with respect to the access road. As seen from Exhibit 1, here pictured, the right-of-way could have taken off directly from the 21 acres condemned without going upon or separating the remainder of land or cutting through a fine field of oats as it did by taking the longer and southwest course. And the jury could have reasonably concluded on the basis of the excluded evidence just mentioned that full compensation to Mrs. Wheeler should be no more than market value of the roadway condemned. In reply brief appellee tacitly admits relevancy of the excluded testimony; not amounting however to an admission against interest. She says: "Aside from this, evidence to the effect that Mr. Gorman requested that the road be located where it was or that he approached the Mayor and requested that the plant be placed on Appellee's farm did not constitute any character of admission against interest and did not tend to show that Appellee was not damaged by reason of the placement of the road and the plant on her farm. As a matter of fact, the request that the road be placed where it was *would only tend to show that the road did damage at that place to a lesser degree* than had it been placed somewhere else and evidence to the effect that Mr. Gorman requested that the plant be placed on the farm would tend to show that Appellee would be justly compensated

for her damage and that she would be dealt with fairly by the City." (Emphasis ours.)

■ In our opinion, from consideration of the record as a whole, exclusion of the evidence just under discussion had the probable result of prejudice to Appellant; Rule 434, Texas Rules of Civil Procedure; Texas Power & Light Co. v. Hering, 148 Tex. 350, 224 S.W.2d 191; rendering unnecessary a discussion of further points. However these additional conclusions may be stated: (1) Despite appellant's argument to the contrary, Mr. Currin was a qualified witness on land values of the subject property; (2) while it is not disputed that prior to any proceedings for condemnation appellee listed the farm for sale for two weeks with Roscoe Thompson, a realtor, there was no error in the court's instruction to disregard all testimony as regards her prior listing of the property because no price was indicated in such connection as a basis for an admission against interest. We do not understand that the ruling made was inclusive of the following testimony of Gorman (not objected to by opposing counsel) "I told Mr. Clark at one time Mrs. Wheeler had requested she wanted $150,000.00 for it. It was considerably some time since she had told me, a considerable time before that." (Referring to June 21, 1957).

To sum up: (1) it may be that the balance of this acreage has been depressed in value because of the particular use for which the .26 acres was taken. But the opinion of witnesses as to depreciation in value of the land by reason of the Sewage Treatment Plant should be supported by facts and particulars with respect to the factors which account for the depreciation. In arriving at the item of damages, says the Court in Parker County v. Jackson, 5 Tex.Civ.App. 36, 23 S.W. 924, 925 (later quoted in State v. Carpenter, supra.) "The parties would have the right to introduce evidence of everything that would tend to affect the value of the land, in the estimation of a proposed purchaser, or that would tend to make it more or less valuable to the present owner, such as the shape in which the tract will be left; the increased amount of fencing, if any, that will be required; the increased expenditures made necessary to provide water; the added facilities, if any, provided for travel to the owner of the land." (2) "The exclusion of relevant testimony is usually regarded as material error, especially where there is a conflict in the evidence." 16 Tex.Jur. (Eminent Domain), p. 601.

Judgment of the trial court is reversed and the cause remanded.

### On Motion for Rehearing

Appellee correctly points out that the stipulation between the parties concerning the representative capacity of Mr. Gorman, son-in-law of condemnee, is stated in present tense; relating to time of the trial and not to any situation of agency prior to that time. It reads: (Mr. Loomis) "We are further agreeable to stipulating that G. W. Gorman is the legal representative in all things of Mrs. Elizabeth Wheeler, a feme sole and widow, who is ill and unable to attend court at this time." In interest of accuracy the original opinion should have merely quoted the stipulation in full.

■ However, appellee mistakenly asserts that "no other evidence of agency was offered except the stipulation." Gorman was the only person dealing with the land on behalf of Mrs. Wheeler in antecedent negotiations with the City or its Engineer or others, so far as the record discloses; and this, within the limitations set by Gorman himself on cross-examination, made admissible all dealings had with Mayor Potter or Engineer Rector, either from his standpoint or theirs. He testified:

"Well, did you say you served as manager is what I asked you, of the farm operations? A. I merely stated that I was carrying Mrs. Wheeler's instructions to her and looked after the farm for her and meaning looking after for her I do the things she is unable to do herself.

"Q. Yes, sir. Does that include negotiating with reference to this plant site with the City of Cedar Hill? * * A. I did do the other work for her.

"Q. Whatever she tells you to do you do, you don't have any independent authority of your own? A. That is absolutely correct.

"Q. So, if you approached the City with reference to anything it would be under her instructions and authority, is that your testimony? A. In some cases the suggestions were brought out and the plans were mapped out before they were taken to her.

"Q. Well, sir, what I am talking about, if you made a proposition of any kind you did it with her authority, then, is that your testimony? A. That is correct. * * *

"Q. Well, Mr. Gorman, I don't know, I am not trying to pin you to an exact date, my question is directed to prior to the condemnation of this property on June 21, 1957, and prior to its having been located, fixed for location on this site and some time prior to December of 1956, which was about six months before June 21, 1957, isn't it a fact you approached some representative of the city, either elected or appointed representative of the city? * * *

"Q. And approached him on the basis of requesting that the plant site be put on this property? A. We never exactly requested. The first knowledge I had of it, Mr. Potter, who was then Mayor of the City, came to my house and told me that they were planning to put the sewer disposal plant on that particular location and when we found out, we had our first knowledge of it, the City of Cedar Hill had already made their surveys, gotten their elevations for their drainage and all the particulars as far as the surveys were concerned."

Boiled down, the testimony of Gorman was that he had never requested on behalf of appellee that the plant be located on the Wheeler property, and the statements of appellant's witnesses (Messrs. Potter and Rector) is simply viewed as contradictory thereof and hence improperly excluded.

With respect to sufficiency of evidence in support of issue 3, appellee strongly argues that she has satisfied the requirements of State v. Carpenter, 126 Tex. 604, 89 S.W.2d 194, 201; the witness Currin having stated the factors on which his opinion of diminished value was based; not being "required to testify to specific items of injury and damage in order to meet the burden of establishing damage." We are still of the opinion that the factors recited by appellee's witness Currin were stated in the *abstract,* leading the jury into the realm of speculation as to what *concrete* elements of injury to the land is comprehended in his estimate of depreciation. As we read State v. Carpenter, supra, it does not hold that the naked opinion of an expert, without some evidentiary basis, would support a verdict such as we have here. Appellee quotes from the Carpenter case as follows: "As indicated above, the correct method of adducing evidence as to market value is by witnesses, after suitable qualification, giving their opinion as to the market value of the residue before and after the taking, rather than undertaking to testify to specific items of injury and damage. See Gainesville H. & W. Ry. Co. v. Hall, 78 Tex. 169, 175, 176, 14 S.W. 259, 9 L.R.A. 298, 22 Am. St.Rep. 42." In immediate context, however, the Commission of Appeals goes on to say that *"If the witness answers that there has been a depreciation or an enhancement in the market value after the taking, in either event it is proper to question him as to the basis of his opinion and the matters he has taken into consideration in arriving at his opinion."* (Emphasis ours.) And earlier in State v. Carpenter there appears the following statement from 3 Sedg. on Damages, § 1163: "As a general rule, under any head of the law, where the measure of damages

is determined by a difference in market value, it cannot be a matter of any consequence of what elements this is made up, and evidence giving the market value before and after the injury would be quite sufficient. * * * Land, however, has in many cases a very indeterminate market value, especially farming or wild land, such as is involved in perhaps the greater number of condemnation proceedings. *Hence, it has become the practice to take evidence, not only directly as to the market value, but as to every element which enters into it, and tends to diminish it."* (Emphasis ours.) As in the appeal of Tennessee Gas Transmission Company, supra, we again conclude that the evidence here was insufficient to support the jury finding.

Motion of Appellee for rehearing is overruled.