The STATE of Texas, Appellant,

v.

J. D. SCARBOROUGH et ux., Appellees.

No. 7597.

Court of Civil Appeals of Texas.

Texarkana.

Oct. 27, 1964.

Rehearing Denied Nov. 11, 1964.

Samuel D. McDaniel, Jackson Hubbard, Asst. Attys. Gen., Austin, for appellant.

Russell & Perkins, Mt. Pleasant, for appellees.

CHADICK, Chief Justice.

This is an eminent domain action. The judgment in a condemnation suit awarding landowners' damages for diminution in value of two small residual tracts is affirmed.

The State condemned and took 2.4 acres out of a 3.9 acre tract of land belonging to Mr. and Mrs. J. D. Scarborough. The award made to compensate for the acquired acreage is not questioned. Evidence was offered to show damage to the 1.5 acre residue. The State in this excerpt from its brief suggests the nature of the damage claimed, to-wit: "Study of the record has revealed * * * only four things which could possibly be damaging about the taking. (1) The severance itself (though this seems farfetched in the case of residential homesite property); (2) Proximity of the house on the north remainder to the new highway; (3) The unfenced condition of the new right-of-way; (4) The cost of a driveway to serve the south remainder."

The residual tracts are non-contiguous, lying on either side of Interstate Highway No. 30, the dwelling house on a half-acre strip to the north and the other portion of approximately an acre lying on the south side with no direct access facility from one tract to the other. The right-of-way of Interstate 30 passes within 28 to 34 feet of the dwelling. The landowners and their seven children have occupied the entire 3.9 acre tract as a homestead since 1945, and in that time the produce of its cultivation and pasture has been a substantial adjunct of the family larder.

The landowners testified and offered two expert appraisal witnesses. Each expert testified to acquaintance with the tract for a long period of time extending back several years beyond the initial condemnation proceedings. These experts, as well as the husband landowner, expressed opinions as to market value of the residue before and after the condemned portion was taken.

■ The question for decision is whether or not there is evidence, and if so, sufficient evidence to support the jury's finding that the residual acreage was diminished $1500 in value. The State argues that opinions of value tendered into evidence by the landowners have no probative weight because the witnesses did not articulate the nature of the damage, the effect of the damage on the various parts of the residual acreage and the relationship of the damage to market value differences, if any, before and after the State's acquistion. To show error, the State cites and primarily relies upon three utility right-of-way cases, Tennessee Gas & Transmission Co., v. Zirjacks, (Tex.Civ.App., wr. dism.), 244 S.W. 2d 837; City of Cedar Hill v. Wheeler, (Tex.Civ.App., no writ), 326 S.W.2d 236; Texas Electric Service Co. v. Vest, (Tex. Civ.App., error ref., n.r.e.), 310 S.W.2d 733. Also cited as supporting the State's proposition are County of Bexar v. McAlpine (Tex.Civ.App., error ref., n.r.e.), 363 S.W.2d 891; County of Bexar v. Cooper (Tex.Civ.App.1961) 351 S.W.2d 956; Texas Electric Service Company v. Lineberry, 162 Tex. 570, 349 S.W.2d 105; Texas Electric Service Company v. Campbell, 161 Tex. 77, 336 S.W.2d 742.

In the Tennessee Gas & Transmission Co. v. Zirjacks case, (244 S.W.2d 837, at p. 838), it is said: "One claiming damages to land must show the nature of the damage, the effect upon various portions of the tract and the relationship of the same to market value. A mere conclusion as to market value is insufficient for this purpose." Obviously this refers to a party claiming damage, not his value witness. In

the same paragraph from which this quotation is taken the opinion states, "We have carefully examined the statement of facts and find no specific testimony detailing in what ways the laying of the pipe line (thirty inches in diameter) twenty-four inches under the surface across the property within the fifty-foot strip would affect the value of the land lying outside the fifty-foot strip. * * *" This language is the equivalent of a statement that there is no proof of damage to the land outside the right-of-way.

In the Texas Electric Service Company v. Vest case (310 S.W.2d 733), a 50-foot strip across eight sections out of a ranch of thirty-seven sections of land was condemned to provide right-of-way for the Electric Company's lines. The only damage to the land outside of the condemned strip was said to be the burden placed on it of ingress and egress to the right-of-way. To use the words of the opinion, "* * * [T]he witnesses did not sufficiently explain or detail how and why" the acreage outside of the right-of-way would be damaged. In City of Cedar Hill v. Wheeler, (326 S.W. 2d 236), the value witness offered by the appellee testified to certain factors that governed his opinion of value, but the court at p. 243 said: "We are still of the opinion that the factors recited by appellee's witness Currin were stated in the abstract, leading the jury into the realm of speculation as to what concrete elements of injury to the land is comprehended in his estimate of depreciation. As we read State v. Carpenter [126 Tex. 604, 89 S.W.2d 194], supra, it does not hold that the naked opinion of an expert, without some evidentiary basis, would support a verdict such as we have here." Here again, absence or the unsatisfactory condition of evidence of damage is a foundation of the decision.

Two of these three cases deal with exceptionally large tracts of land over which utility right-of-ways had been appropriated. Common to each of the cases is the insufficiency of evidence of damage to the residual acreage, that is, the large acreage lying

outside of the condemned strip. Though emphasis in the opinions is placed upon the failure of the expert witness to specify the nature of the damage to the residual acreage and translate that damage into the market price, the insufficiency of evidence from any source showing damage to the residual acreage is the common denominator of the cases. In the case at hand the damage and its nature is summed up in the quotation from the State's brief in the second paragraph of this opinion, and it is uncontradicted that the value witnesses were well acquainted with the remnants of land left after the condemned strip was taken. By implication these witnesses knew the condition of the tracts, and their testimony showing a diminution in value related the condition to their opinion of market value. State v. Carpenter, 126 Tex. 604, 89 S.W.2d 194, says: " * * * the correct method of adducing evidence as to market value is by witnesses, after suitable qualification, giving their opinion as to the market value of the residue before and after the taking, rather than undertaking to testify to specific items of injury and damage. See Gainesville, H. & W. Railway Company v. Hall, 78 Tex. 169, 175, 176, 14 S.W. 259, 9 L.R.A. 298, 22 Am.St.Rep. 42." Here the facts of damage to the residue are in the record and the witnesses are acquainted with such facts. Their testimony translated this damage into a diminished market value.

What compelling reason can there be for the witness to first detail the "how" and "why" of his opinion before expressing his opinion of value? The facts are before the jury. The grist has been brought to the mill. The jury is apprised of the proximity of the dwelling house to the highway, the need to construct a bridged roadway entrance, to build fences and otherwise reprepare the odd-shaped severed tracts for cultivation or pasture, etc. The State might, if it chose, have tested the reasonableness of the value witness's conclusions by cross-examination upon the "how" and "why" detail. The evidence is sufficient to support the jury's verdict.

An appraiser for the State testified the value of the residual acreage of the Scarborough homestead was exactly the same before and after the State appropriated the 2.4 acres. The State's endeavor to have the appraiser relate the details of price, etc., in three separate sales of land that the witness used in forming this opinion of value was thwarted by the trial judge ruling such sales inadmissible. The objections directed to the three sales transactions were (1) such sales did not involve tracts of comparable land; and (2) that location of Interstate 30 caused an enhancement of the value of the land in the three transactions that was not special to such land alone but a benefit shared generally by all property in the community. It was stipulated that the tracts conveyed by the three transactions were "remainders of land which the Interstate highway has either severed or taken a portion of". The appraiser indicated by his testimony that he deemed the tracts involved in these sales comparable to the residue Scarborough tracts because they were on the back side of appropriated tracts, and had "the advantage of the service road the same as Scarborough". Referring to the land in these three separate transactions the appraiser testified, "Value has been increased because the Interstate went in there".

The appraiser testified that he had examined land values in the vicinity including sales which he took into consideration in forming an opinion. The jury was permitted to hear the appraiser's opinion of the value of the Scarborough farm residue; excluded only was the appraiser's hearsay testimony of the three sales transactions. The hearsay nature of the land sales made them admissible only to reveal a part of the substructure supporting the appraiser's opinion of value. State v. Oakley, 163 Tax. 463, 356 S.W.2d 909. The appraiser was shown to be qualified, skilled and experienced though cross-examination

was designed to arouse doubt of the appraiser's unbiased attitude. The hearsay evidence could not properly be considered by the jury as proof that a sale of the properties had occurred, or the properties had sold for the prices stated, or as evidence of the market value of the Scarborough tract (State v. Oakley). The function of the excluded evidence was to make known to the jury what the appraiser said he used in part as a basis of his opinion of value. The excluded evidence goes to the appraiser's qualification to express an opinion. And as previously noticed, qualification was not denied or seriously challenged.

This court is not convinced that the absence of the excluded testimony, it being cumulative of that showing the appraiser's qualification, secondary in nature and limited in effect, probably caused the rendition of an improper verdict. Rule 434. This case is distinguishable from those such as City of Austin v. Cannizzo, 153 Tex. 324, 267 S.W.2d 808; City of Houston v. Pillot, Tex.Civ.App., 73 S.W.2d 585, reversed on other grounds, (Tex.Comm. App.) 105 S.W.2d 870, etc., where non-hearsay evidence of comparable sales is the subject of discussion. The State correctly points out that the trial judge did not declare the basis of his ruling. However, if he was prompted to rule by misconception, such mistake is unimportant as excluding the sales was not calculated to cause the rendition of an improper verdict.

The appellee's brief fends off the State's point by countering with the proposition that the State carried the burden of proof but failed to prove the severed tracts of Scarborough land received a special and direct benefit not shared by other property in the community. As supporting the proposition the appellees cite: State v. Davis (Tex.Civ.App.) 140 S.W.2d 861, no writ; Strickland v. City of Friona (Tex.Civ. App.) 294 S.W.2d 254, wr. ref., N.R.E.; City of Houston v. Huber (Tex.Civ.App.) 311 S.W.2d 488, no writ; and Art. 3265, Secs. 3 and 4, Vernon's Ann.Tex.Civ.St.

The State's appraiser testified the Scarborough tracts had the advantage of a service road, which suggests a special benefit, but there is no evidence that all property in the community did not share the same advantage. In view of the conclusion already expressed further discussion is not warranted.

The forceful motion for new trial filed by the State caused a careful re-examination of the court's original disposition of this appeal. Following further study it has been concluded that the original opinion properly disposed of the case, but the opinion could very well be put in more precise language. This opinion is substituted for the first, which is withdrawn. The judgment of the trial court is affirmed and the State's motion for re-hearing is respectfully overruled.