**SOUTHWESTERN BELL TELEPHONE COMPANY, Appellant,**

v.

**Homer GRIFFIN et ux., Kate Griffin, Appellees.**

**No. 7885.**

Court of Civil Appeals of Texas.

Texarkana.

June 18, 1968.

J. K. Brim, Sulphur Springs, Jerry G. Thorn, Dallas, for appellant.

Howard Smith, William McDowell, Smith, Johnson & McDowell, Sulphur Springs, Woodrow H. Edwards, Mt. Vernon, for appellee.

FANNING, Justice.

An eminent domain case. Appellant telephone company condemned a diagonal easement across appellees' 68.9 acre tract of land for the purpose of laying an underground communications cable. The award of the special commissioners was duly appealed from by appellees to the county court of Hopkins County, Texas. Thereafter, the legislature, by special enactment, transferred eminent domain jurisdiction in Hopkins County from the county court to the district court. Trial in the district court resulted in a judgment for appellees entered on a verdict of a jury in response to special issues. The amount of such judgment was $5,837.81, less $388.50 previously withdrawn by appellees, leaving a balance of $5,449.31. Such judgment was composed of $414.17 for the 1.10446 acres of land within the easement and $5,423.64 for the diminished value of the remainder of the 68.9 acres outside the easement. Appellant has appealed.

Appellant on appeal has not presented any point or points complaining of the portion of the judgment for the 1.10446 acres of land within the easement. Appellant's points on appeal relate to the portion of the judgment with respect to the damages awarded appellees for the remainder of their 68.9 acres outside of the easement.

Special Issues 3 and 4 and the jury's answers thereto were as follows:

"SPECIAL ISSUE NO. 3:

"From a preponderance of the evidence, what do you find was the reasonable market per average acre of the remainder of the defendant's land not condemned, that is, the balance of defendant's property other than the strip of land containing one and fraction acres upon which the easement was acquired, immediately before said easement was taken for construction of a telephone, telegraph and communications system on October 12, 1965?

Answer in dollars and cents or none.

ANSWER: $500.00 per average acre.

"SPECIAL ISSUE NO. 4:

"What do you find from a preponderance of the evidence was the reasonable market value per average acre, of the remainder of the defendants' tract of land, exclusive of the strip of land upon which the easement was obtained, immediately after such easement was taken for construction of a telephone, telegraph and communications system on October 12, 1965?

Answer in dollars and cents or none.

ANSWER: $420.00 per average acre."

Appellant has no point or points attacking the jury's finding to special issue No. 3 and the evidence amply supports the jury's finding to special issue No. 3.

Appellant presents 7 points on appeal. Appellant's points 1 to 6, inclusive, are in essence to the effect that there was "no evidence" and "insufficient evidence" to support the jury's answer to special issue No. 4. Appellant by its 7th point contends that the judgment was excessive.

Appellees own 68.9 acres of land, approximately one-third of which is located within the city limits of Sulphur Springs, Hopkins County, Texas. The tract is rectangular in shape, located in the western part of the city and is bounded on the south by Main Street and on the north by the L. & A. Railway.

Appellant telephone company, in the Fall of 1965, commenced proceedings to condemn a 20-feet wide and 2401-feet long diagonal easement across appellees' land for the purpose of constructing, operating, maintaining, replacing, and removing such telephone, telegraph and communications systems as appellant may from time to time require, consisting of underground cables, wires, conduits, splice boxes and other communication appurtenances under and across said 20-foot right-of-way, with the right to clear and keep cleared all trees, roots, brush and other obstructions from the surface and sub-surface of said right-of-way, and the right to install, maintain and use gates and fences which cross said right-of-way and ingress and egress along the said strip.

At a hearing before the Special Commissioners, the requested easement and certain related rights were granted and appellees were awarded damages. In the easement granted appellees are reserved the right of ordinary use of the land insofar as such use does not interfere with appellant's telephone cable. Appellant also stipulated that construction of railroad spur tracks, roads, streets and drainage structures over, across or through the easement would not constitute interference. Appellant also did not condemn the right of ingress and egress over the remainder of the 68.9 acre tract but did condemn the right of ingress and egress over the easement strip itself. Appellees timely appealed and in October, 1967, a jury trial was commenced in the district court of Hopkins County, Texas. Appellees admitted appellant had the right to condemn the easement and obtained the right to open and close. Judgment was thereafter entered in November, 1967.

The easement, containing 1.10446 acres of land, enters appellees' tract from the east at a point ten feet south of the northeast corner and extends diagonally 2401 feet across appellees' property to a point in the west property line, approximately 625 feet north of the southwest corner.

The main thrust of appellant's argument on its "no evidence" and "insufficient evidence" points is to the effect that appellees' real estate expert witnesses in testifying to their opinions as to market value of the remainder of the 68.9 acres, after the taking of the 1.10446 acre easement, did not explain, or sufficiently explain, the "how" and "why" the remainder would be damaged to the extent testified to by such expert witnesses and that their opinions on the value of the remainder were therefore merely conclusions not supported by evidence of probative force and were not sufficiently supported by evidence of probative force. In support of these contentions appellant relies principally upon the Zirjacks case [1] and other cases of similar nature cited in its brief among which are the following found below.[2]

1. Tennessee Gas & Transmission Co. v. Zirjacks (Tex.Civ.App.1911) 244 S.W. 2d 837, wr. dism.

2. Texas Electric Service Company v. Vest, 310 S.W.2d 733 (Tex.Civ.App.1958) writ. ref., n. r. e.; City of Cedar Hill v. Wheeler, 326 S.W.2d 236 (Tex.Civ.App.1959), wr. ref., n. r. e.; Texas Electric Service Company v. Campbell, 161 Tex. 77, 336 S.W.2d 742 (1960); Texas Electric Service Company v. Linebery, 162 Tex. 570, 349 S.W.2d 105 (1961); County of Bexar v. Cooper, 351 S.W.2d 956 (Tex.Civ.App. 1961) no writ. hist.; County of Bexar v. McAlpine, 363 S.W.2d 891 (Tex.Civ. App.1963), writ. ref., n. r. e.

In answer thereto appellees argue the opinions of value tendered into evidence by witnesses for the appellee landowners did have probative force and weight and were sufficient to support the jury's verdict and the judgment of the court, and that various value witnesses tendered by the landowners did articulate the nature of the damage, the effect of the damage on the residual acreage and the relationship of the damage to market value differences before and after appellant's acquisition of the easement. Appellees in support of this view in their brief cite the Scarborough case,[3] the McFadden case,[4] and other authorities.

Appellees presented three real estate expert witnesses on values. Two of these expert witnesses also testified as to the "how and why" the remainder was damaged after the taking of the easement. Appellee landowner, Homer Griffin, also testified with respect to aspects of damage to the remainder of the land.

Appellees' first expert witness, Mr. M. Z. Bailey, was shown to be a well qualified real estate appraisal expert and to be thoroughly acquainted with the property in question and with property values in Sulphur Springs and in Hopkins County, Texas, and Mr. Bailey duly qualified as an expert to testify as to the values in question. He testified the highest and best use for appellees' property was country estate, with two to five acre country estates, for residential development, and for commercial development along the railroad and highway. He testified that the market value of the easement strip was $500.00 per average acre immediately before the take and $175.00 per average acre immediately after the take. He testified the market value of the approximately 68 acres remainder immediately before the take to be $500.00 per average acre and $400.00 per average acre immediately after the take. As hereinafter related Mr. Bailey also testified in

certain respects as to the "how" and "why" of the damage to the remainder.

Appellees' second expert witness—Mr. William R. Lemon—was shown to be a well qualified real estate appraisal expert and to be thoroughly acquainted with the property in question and with property values in Sulphur Springs and in Hopkins County, Texas, and Mr. Lemon duly qualified as an expert to testify as to the values in question. He testified similarly as Mr. Bailey as to the highest and best uses of the land. He also testified that the market value of the easement immediately before the take was $525.00 per average acre and had a market value immediately after the take of $100.00 per average acre. He further testified that the remainder of appellees' land immediately before the take would have a market value of $525.00 per average acre and after the take of $400.00 per average acre. Mr. Lemon further testified to the effect that in arriving at his expert opinion of the values in question that he had called upon his experience and knowledge of sales in the area.

Appellees' third expert witness, Mr. Lowell Cable, was shown to be a well qualified real estate appraisal expert and to be thoroughly acquainted with the property in question and with property values in Sulphur Springs and in Hopkins County, Texas, and Mr. Cable duly qualified as an expert to testify as to the values in question. He testified that the highest and best use of the property was for industrial and residential purposes. He testified that the market value of the easement strip immediately before the take was $500.00 per average acre, and $150.00 per average acre immediately after the take. He testified that the remainder of appellees' land immediately before the take was of the value of $500.00 per average acre and that immediately after the take such remainder had been reduced in value by virtue of the easement $100.00

3. State v. Scarborough, 383 S.W.2d 839 (Tex.Civ.App.1964) writ. ref., n. r. e.

4. City of Houston v. McFadden (Tex.Civ. App.1967), 420 S.W.2d 811, writ. ref., n. r. e.

per average acre. Also as hereinafter related, Mr. Cable testified in detail as to the "how" and "why" of the damage to the remainder and articulated these reasons in his testimony before the jury.

Appellee, Mr. Griffin, testified on cross-examination to the effect that five poles (being warning sign posts) were located on his land along the take and that the diagonal easement had severely damaged the value of the remainder of his land in that it would reduce purchasers and that it would be very difficult to find purchasers who would buy the land with the diagonal easement upon it.

Numerous photographs of the property were introduced in evidence and the jury was aware of the signs placed on the easement, as well as the manner in which the diagonal easement crossed and bi-sected appellees' land, and maps or drawings of the land showing the location of the easement were before the jury, and the jury was given full information by the evidence, both oral and pictorial, of the general situation of appellees' land and the location and effect of the diagonal easement upon the remainder of appellees' land.

Appellant placed two expert value witnesses upon the stand, Mr. Joe W. Whitworth and Mr. J. D. Bennett, who likewise duly qualified as real estate appraisal experts to testify as to the values in question. Mr. Whitworth valued the land immediately before the take at $400.00 per average acre and the same immediately after the take. He also found no damage to the remainder except for the nuisance of the telephone cable warning sign posts placed on the easement. His estimate was $150.00 for the damage to the remainder resulting from the sign posts. Both Mr. Whitworth and Mr. Bennett testified that the highest and best use of the land before and after the take was for grazing purposes. Mr. Bennett testified that the market value of the easement strip immediately before the take was $500.00 per average acre and was of the same value immediately after the take, and likewise testified to the same effect with reference to the value of the remainder both immediately before and immediately after the take.

As hereinbefore referred to, appellant heavily relies upon the Zirjacks case and cases of similar nature. We think *Zirjacks* is not in point here because appellees' expert witnesses Cable and Bailey clearly articulated detailed reasons as to the "how and why" of the damage to the remainder, and other facts and pictorial evidence were also in evidence before the jury which tended to show damage to the remainder. Mr. Cable testified in detail as to many reasons upon which he based his opinion of the diminished market value of the remainder among which were the following: (1) invasion and lack of privacy by reason of the easement, (2) damage to the Northeast corner by reason of the manner in which the diagonal easement was located, making that portion much less usable, (3) difficulty in platting of the land for country estates, residential lots or for industrial purposes, by reason of the diagonal easement, (4) the limitation of use placed on the land, (5) the owners' inability to construct any permanent improvements over the easement, and other additional reasons. While Mr. Bailey did not testify to as many detailed reasons on the "how and why" as Mr. Cable did, nevertheless he did articulate specific reasons as to the "how" and "why" the market value of the remainder was reduced by the taking of the easement. In this connection, Mr. Bailey testified, in substance, that the elimination of some purchasers, invasion of and lack of privacy and the requirement to construct all permanent improvements so as to remain off the easement, were some of the reasons why the market value of the remainder was reduced.

We think *Scarborough* (383 S.W.2d 839) and *McFaddin* (420 S.W.2d 811) are in

point here and that *Zirjacks* (244 S.W.2d 837 [1951]) is not in point here and is distinguishable for the reasons which were well stated in Scarborough. We quote from *Scarborough* in part as follows:

"* * * The State in this excerpt from its brief suggests the nature of the damage claimed, to-wit: 'Study of the record has revealed * * * only four things which could possibly be damaging about the taking. (1) The severance itself (though this seems far-fetched in the case of residential homesite property); (2) Proximity of the house on the north remainder to the new highway; (3) The unfenced condition of the new right-of-way; (4) The cost of a driveway to serve the south remainder.'

"* * * * * *

"In the Tennessee Gas & Transmission Co. v. Zirjacks case, (244 S.W.2d 837, at p. 838) it is said: 'One claiming damages to land must show the nature of the damage, the effect upon various portions of the tract and the relationship of the same to market value. A mere conclusion as to market value is insufficient for this purpose.' Obviously this refers to a party claiming damage, not his value witness. In the same paragraph from which this quotation is taken the opinion states, 'We have carefully examined the statement of facts and find no specific testimony detailing in what ways the laying of the pipe line (thirty inches in diameter) twenty-four inches under the surface across the property within the fifty-foot strip would affect the value of the land lying outside the fifty-foot strip * * *' This language is the equivalent of a statement that there is no proof of damage to the land outside the right-of-way.

"In the Texas Electric Service Company v. Vest case (310 S.W.2d 733) a 50-foot strip across eight sections out of a ranch of thirty-seven sections of land was condemned to provide right-of-way for the Electric Company's lines. The only damage to the land outside of the condemned strip was said to be the burden placed on it of ingress and egress to the right-of-way. To use the words of the opinion, '* * * [T]he witnesses did not sufficiently explain or detail how and why' the acreage outside of the right-of-way would be damaged. In City of Cedar Hill v. Wheeler (326 S.W.2d 236), the value witness offered by the appellee testified to certain factors that governed his opinion of value, but the court at page 243 said: 'We are still of the opinion that the factors recited by appellee's witness Currin were stated in the abstract, leading the jury into the realm of speculation as to what concrete elements of injury to the land is comprehended in his estimate of depreciation. As we read State v. Carpenter (126 Tex. 604, 89 S.W.2d 194, 979), supra, it does not hold that the naked opinion of an expert, without some evidentiary basis, would support a verdict such as we have here.' Here again, absence or the unsatisfactory condition of evidence of damage is a foundation of the decision.

"Two of these three cases deal with exceptionally large tracts of land over which utility right-of-ways had been appropriated. Common to each of the cases is the insufficiency of evidence of damage to the residual acreage, that is, the large acreage lying outside of the condemned strip. Though emphasis in the opinions is placed upon the failure of the expert witness to specify the nature of the damage to the residual acreage and translate that damage into the market price, the insufficiency of evidence from any source showing damage to the residual acreage is the common denominator of the cases. In the case at hand the damage and its nature is summed up in the quotation from the State's brief

in the second paragraph of this opinion, and it is uncontradicted that the value witnesses were well acquainted with the remnants of land left after the condemned strip was taken. By implication these witnesses knew the condition of the tracts, and their testimony showing a diminution in value related the condition to their opinion of market value. State v. Carpenter, 126 Tex. 604, 89 S.W. 2d 194, says: '* * * the correct method of adducing evidence as to market value is by witnesses, after suitable qualification, giving their opinion as to the market value of the residue before and after the taking, rather than undertaking to testify to specific items of injury and damage. See Gainesville, H. & W. Railway Company v. Hall, 78 Tex. 169, 175, 176, 14 S.W. 259, 9 L.R.A. 298, 22 Am. St.Rep. 42.' Here the facts of damage to the residue are in the record and the witnesses are acquainted with such facts. Their testimony translated this damage into a diminished market value.

"What compelling reason can there be for the witness to first detail the 'how' and 'why' of his opinion before expressing his opinion of value? The facts are before the jury. The grist has been brought to the mill. The jury is apprised of the proximity of the dwelling house to the highway, the need to construct a bridged roadway entrance, to build fences and otherwise reprepare the odd-shaped severed tracts for cultivation or pasture, etc. The State might, if it chose, have tested the reasonableness of the value witness's conclusions by cross-examination upon the 'how' and 'why' detail. The evidence is sufficient to support the jury's verdict."

*McFadden* follows *Scarborough* and holds that *Zirjacks* was not in point with the facts in the McFadden case. We quote from the court's opinion in *McFadden,* (420 S.W.2d 811) in part as follows:

"It is contended, however, that a mere conclusion as to market value is insufficient, and that one seeking damages must show the nature of the damage and the relationship thereof to market value. The case of Tennessee Gas & Transmission Co. v. Zirjacks, 244 S.W.2d 837 (Tex.Civ.App.), writ dism., is a good example of the rule where a bare statement of market value is made with no proof showing the nature and extent of the damages. The distinction applicable here is fully and ably discussed in State v. Scarborough, supra, which recognizes the rule that one claiming damages to land must show the nature of the damage and the relationship of the same to market value. A mere conclusion as to market value is insufficient for such purpose. But, this refers to the party claiming damage, not his value witness. There is ample evidence in this case of damage to the McFadden property as a result of the jet overflights. *It is not necessary to look to Weiss' testimony to find this evidence of damage. Plaintiff and his neighbors testified fully to the noise, lights, physical damage to the property, and intense vibrations caused by the low-flying jet aircraft.* Here there was sufficient, specific testimony tending to show why a decline in market value would take place. Zirjacks and similar cases are not in point. * * *." (Emphasis added)

Appellees also further contend that the one word "average" further distinguishes *Zirjacks* and similar cases. The word average is not found in Zirjacks and related cases but in the case at bar appellees' expert witnesses testified to the market value per average acre and appellant's witnesses on cross-examination also testified to market value per average acre. The court in its special issues to the jury inquired as to the market value per average acre. No objection was made to the form of these issues. A similar situation is found in Texas

Power & Light Co., v. Trinity Valley Ranch Co. (Tex.Civ.App.1965), 395 S.W.2d 866, no writ. In this case appellant had condemned a 250 foot wide easement across appellee's ranch. Appellee's witnesses testified as to market value per average acre and gave detailed reasons why the remainder was damaged. Appellant on appeal raised a "no evidence" point citing *Zirjacks.* We quote from the court's opinion in the Texas Power & Light Co. case, supra, in part, as follows:

    "\* \* \* In our opinion the holding (in Zirjacks) is not applicable to the testimony in the record now before us.

    "\* \* \* the witness Ridell testified that the value of the land was '350 an acre average.' This would indicate that he did not value each acre the same, but struck an average of their values for purposes of computing the value of the whole. \* \* \*"

    We hold that there was evidence of probative force to support the jury's finding to special issue No. 4 and that the evidence was amply sufficient to support such finding. Appellant's points 1 through 6, inclusive, are overruled.

    After reviewing the entire record we also hold that the judgment and verdict are not excessive. The findings of the jury were well within the amount of damages testified to by appellees' witnesses and were amply supported by evidence of probative force. Appellant's 7th point is overruled. In this connection see the following authorities: Sample v. Tennessee Gas Transmission Co. (1952), 151 Tex. 401, 251 S.W.2d 221; City of Corpus Christi v. Nemec (Tex.Civ.App.1966), 404 S.W.2d 834, no writ; Southwestern Electric Power Co. v. Presswood (Tex.Civ.App. 1967), 420 S.W.2d 182, no writ; Maddox v. Gulf, Colorado & Santa Fe Ry. Co. (Tex.Civ.App.1956), 293 S.W.2d 499, wr. ref., n.r.e.

The judgment of the trial court is affirmed.