Bernice J. ALLEN, et al., Appellants,

v.

The CITY OF TEXAS CITY,
Texas, Appellee.

No. 01–88–00683–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 31, 1989.

Wayne H. Paris, Houston, for appellants.

Holman Lilienstern, Neugent, Lilienstern, Lyons & Plackemeier, Texas City, Edward H. Schwab, III, Sherrill H. Tompkins, Schwab & Tompkins, Galveston, for appellee.

Before EVANS, C.J., and O'CONNOR and DUGGAN, JJ.

## OPINION

DUGGAN, Justice.

This is an appeal from an order dismissing a class action suit for inverse condemnation.

Between October 1980 and February 1983, appellee, the City of Texas City ("Texas City"), built a rainwater levee. Appellants are a group of landowners whose property is located between the levee to the south and Moses Lake and Dollar Bay to the north. Some of the appellants filed suit against Texas City on October 18, 1982, seeking damages for the taking, damaging, or destroying of their properties for public use without compensation, in violation of Tex.Const. art. I, sec. 17, as a result of the construction of the levee. In March 1983, after a series of hearings, the trial court severed landowners who asserted additional claims for ingress and egress, and certified the present suit as a class action.

Some five years later, in February 1988, appellants filed their second amended petition, asserting:

The construction and closure of the rainwater levee have left Plaintiffs and their class isolated between the levee and Moses Lake and Dollar Bay. *Such completed construction has interfered with Plaintiffs' and the class' real property, in that it has caused a diminishment in fair market value of each parcel of real property* in the area by upwards to 50 percent, as measured by the properties' fair market value before and after the completion of the levee. The construction and closure of the said levee *have made the parcels of real properties located in the area and owned by Plaintiffs and their class, more suscep-*

*tible to flooding and, therefore, have unreasonably interfered with Plaintiffs' and their class' properties*, which have proximately caused damages. The Defendant has constructed said levee without the institution of Eminent Domain proceedings in order to fairly compensate Plaintiffs and their class for their losses.

(Emphasis added.)

Texas City filed special exceptions to appellants' second amended petition, urging that, even if their allegations were true, appellants failed to plead facts showing actual physical damage to or appropriation of their real property, such as is required to constitute a "taking" under Tex. Const. art. I, sec. 17. Article I, section 17 provides:

No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person....

When the trial court granted Texas City's special exceptions, appellants declined to amend and elected to stand on their current pleadings. The trial court then dismissed appellants' suit.

Appellants' sole point of error urges that the trial court erred in granting Texas City's special exceptions and entering an order of dismissal, because appellants stated a compensable claim upon which relief could be granted under Tex. Const. art. I, sec. 17.

The term "condemnation" refers to the process or procedure by which a sovereign state exercises its right to take property of a private owner for public use, without consent, but upon the payment of just compensation. *Hubler v. City of Corpus Christi*, 564 S.W.2d 816, 820 (Tex.Civ. App.—Corpus Christi 1978, writ ref'd n.r. e.). Inverse condemnation occurs when property is taken for public use without process or without proper condemnation proceedings, and the property owner attempts to recover compensation therefor. *City of Abilene v. Burk Royalty Co.*, 470

S.W.2d 643, 646 (Tex.1971); *Hubler,* 564 S.W.2d at 820.

■ To be entitled to compensation for "inverse condemnation" under article I, section 17, appellants must plead that their property has been "taken, damaged, or destroyed for or applied to public use." Texas law defines such taking, damage, or destruction as (1) actual physical appropriation or invasion of the property, or (2) unreasonable interference with the land owner's right to use and enjoy his property. *DuPuy v. City of Waco,* 396 S.W.2d 103, 108–09 (Tex.1967); *Woodson Lumber Co. v. City of College Station,* 752 S.W.2d 744, 746–47 (Tex.App.—Houston [1st Dist.] 1988, no writ); *Hubler,* 564 S.W.2d at 820; *Nueces County Drainage & Conservation Dist. No. 2 v. Bevly,* 519 S.W.2d 938, 943 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n.r.e.); *Ansley v. Tarrant County Water Control and Improvement Dist. No. One,* 498 S.W.2d 469, 472–74 (Tex.Civ. App.—Tyler 1973, writ ref'd n.r.e.). Appellants did not allege that Texas City physically invaded or appropriated their property, imposed any unreasonable restriction on either use or enjoyment of their land, or interfered in any way with their access to it.

■ Appellants argue that the completed levee interfered with their property by causing a decrease in its fair market value. They also contend that their property is more susceptible to flooding as a result of the levee. However, neither a fall in fair market value, nor an increased susceptibility to flooding, constitutes an actual physical appropriation or invasion of property, or an unreasonable interference with the land owner's use or enjoyment of the property. Appellants cite several cases, discussed below, for the proposition that they are entitled to damages for the diminishment of the fair market value of their property. In each of those cases, however, a finding of actual injury to or taking of the land, or interference with its use and enjoyment, preceded the finding of entitlement to damages. Moreover, in two of the cases cited by appellants, the Texas Supreme Court reversed the court of appeals.

In *City of Abilene v. Downs,* 359 S.W.2d 642, 644 (Tex.Civ.App.—Eastland 1962), *rev'd,* 367 S.W.2d 153 (Tex.1963), sewage discharged by the city onto its own land caused obnoxious odors and insects to be wafted onto plaintiffs' adjoining property. A jury found that the operation of the sewer farm caused odors, fumes, and insects to invade the plaintiffs' land, which resulted in permanent depreciation. The court of appeals affirmed the judgment for plaintiffs. The supreme court reversed, because of venue and statute of limitations issues, and remanded for a new trial, noting that, under the facts of the case, liability did not arise against the city until the operation of its sewer disposal system constituted a nuisance. 367 S.W.2d at 160. The supreme court thereby indicated that some interest must be literally invaded, or some physical damage or harm inflicted before liability would arise. *Id.*

In *City of College Station v. Turtle Rock Corp.,* 666 S.W.2d 318, 319–20 (Tex. App.—Houston [14th Dist.]), *rev'd,* 680 S.W.2d 802 (Tex.1984), a city ordinance required developers to deed to the city, without compensation, one acre of land for parks for every 133 dwelling units. The trial court granted summary judgment, declaring the ordinance unconstitutional, and the court of appeals affirmed. The supreme court reversed the court of appeals, stating that a transfer of title to a small portion of property did not of itself create a compensable taking when the transfer was a valid exercise of the police power. *Turtle Rock Corp.,* 680 S.W.2d at 804–07. We find no support for appellants' position in the supreme court opinions reversing *Downs* and *Turtle Rock Corp.*

In *City of Austin v. Teague,* 570 S.W.2d 389, 390–91 (Tex.1978), the city halted development of the plaintiff's land by declining to issue a water permit in order to preserve a scenic easement. The supreme court found that the City of Austin, by its acts, imposed a servitude on the plaintiff's property without paying for it, and was, therefore, liable for damages. *Teague,* 570 S.W.2d at 394.

Appellants also rely on *Ansley v. Tarrant County Water Control and Improvement Dist. No. One.* Unlike our case, the interference with property rights, and resulting permanent damage, in *Ansley* were alleged to have been caused by repeated increased flooding of the landowners' property, as a result of the district's construction of the nearby dam and spillway. 498 S.W.2d at 472.

Appellants, here, did not plead that the levee was built on their property and constituted a taking or an appropriation. Neither did they plead that the levee's proximity resulted in physical damage to, or restricted their access to, their property, or otherwise interfered with their use and enjoyment of it. To the contrary, appellants refused to amend their pleadings to allege facts showing any such taking, appropriation, damage, restriction, or interference, which resulted in a diminution of fair market value. The trial court, therefore, properly entered an order of dismissal against appellants.

▆ Appellants claim that the applicable statute of limitations is 10 years, and if they sustain flood damage to their property as a result of the levee after that period, they will be without recourse. We disagree. A cause of action for damaging land does not lie for anticipated future damages that have not yet occurred, but accrues at the time land is actually damaged, and is governed by the two-year statute of limitations. *Hubler,* 564 S.W.2d at 823–24; Tex.Civ.Prac. & Rem.Code Ann. sec. 16.003 (Vernon 1986)[1]. Our decision in this case does not bar appellants from pleading and proving damages that they may incur in the future.

We overrule appellants' sole point of error.

The judgment of the trial court is affirmed.

**1.** Formerly Tex.Rev.Civ.Stat.Ann. art. 5526, ch. 716, sec. 1, 1979 Tex.Gen. Laws 1768, *repealed and recodified by* ch. 959, secs. 1 and 9, 1985 Tex.Gen. Laws 3242, 3252 and 3322.