**HARRIS COUNTY, Texas, Appellant,**

v.

**Donald Glenn FELTS and Mary Taylor Felts, Appellees.**

No. C14–93–00108–CV.

Court of Appeals of Texas, Houston (14th Dist.).

July 28, 1994.

Rehearing Denied Aug. 25, 1994.

Jennifer Mouton, Mike Driscoll, Houston, for appellant.

Billy Coe Dyer, Houston, for appellees.

Before ROBERTSON, CANNON and DRAUGHN, JJ.

## OPINION

CANNON, Justice.

This is an appeal of a judgment in an inverse condemnation action brought by appellees, Donald Glenn Felts and Mary Taylor Felts ("Felts"), against appellant, Harris County, Texas ("Harris County"), for damages to their home caused by Harris County's North Eldridge Parkway project. The jury found that appellees' property was damaged under Article I, Section 17 of the Texas Constitution and awarded them $15,645 in damages. The trial court entered judgment on the jury's verdict in favor of appellees and found that appellees' property had been damaged in that amount under Article I, Section 17 of the Texas Constitution. Appellant filed a Motion For Judgment Notwithstanding The Verdict, which the trial court denied. In three points of error, appellant contends that the trial court erred as a matter of law in submitting jury question number 1 and in overruling it's motion for judgment notwithstanding the verdict because: (1) there was no evidence of an inverse condemnation cause of action under Article I, § 17 of the Texas Constitution; and (2) that there was no evidence to support the jury's finding on actual damages. We reverse and render.

In 1978, appellees, Don and Mary Felts, purchased an half acre lot to build their home at 12310 William Dowdell in Cypress, Texas. In 1979, they completed a quality custom-built home, which had a brick exterior, four bedrooms and 2½ baths. They later added a 20' × 40' swimming pool, a patio, decking, and playground equipment to their backyard. The Felts and their three children frequently enjoyed and used their backyard for family recreation and relaxation.

In 1987, appellant, Harris County, decided to construct the North Eldridge Parkway in northwest Harris County. It designed North Eldridge Parkway as a four lane, major thoroughfare to carry heavy volumes of traffic over long distances. It determined that an 100' width of right-of-way was necessary to complete the project. Harris County projected that North Eldridge Parkway would carry 14,338 cars per day when it opened, and would carry 24,100 cars per day by the year 2007.

Harris County's alignment map initially required the acquisition of one square foot of land from the Felts for the North Eldridge Parkway project. In compliance with Harris County's ordinary procedures, Robert Watts, Chief of Harris County Right-of-Way Department, wrote a letter to the Commissioners' Court on March 5, 1987. He requested that it find that a public need existed for the project and for the properties shown in the initial alignment, including the Felts' property. Watts then requested authorization to appraise the properties within the alignment and to make offers to the property owners based on those appraisals. The Commissioners' Court made these authorizations by an order dated March 10, 1987.

Harris County Precinct 3 ("Precinct 3") and the Harris County Right-of-Way Department ("Right-of-Way Department") each drew up a list of three recommended appraisers to appraise the properties needed for North Eldridge Parkway. The only appraiser on both lists was William D. "Bill" Kvinta, a member of the Appraisal Institute, or MAI, who had done work for the department before. Harris County gave Kvinta the assignment of appraising the Felts' property.

Later in 1987, Kvinta initially appraised the Felts' property for appellant and found damages based on the proximity of the four lane, major thoroughfare to their home. He turned his appraisal in to the Right-of-Way Department for review by its staff appraisers, and they approved it. Harris County

did not make an offer to the Felts based on the appraisal it had commissioned, reviewed and approved. By letter dated August 13, 1987, Precinct 3 decided to drop the Felts' property because the precinct commissioner did not wish to expend any funds on the Felts' tract.

Harris County told appellees that it was going to realign North Eldridge Parkway, but it did not change the design of the parkway to go around the Felts' one square foot of land. The Right–of–Way Department suggested to the Engineer's Office that a new alignment map was needed, but the county engineer refused to revise the map.

On November 29, 1989, the Felts sent a letter to Watts to protest the Right–of–Way Department's decision concerning their home. The Felts' letter explained that "moving the Parkway over 3″–6″ so as not to have to acquire a piece of our property does not take the damages away." Watts agreed with the Felts and wrote Precinct 3 on January 17, 1990, urging that it reconsider its August 13, 1987 decision to drop the Felts' tract. The construction of the parkway began in December 1989 and was completed in 1992.

In the meantime, the Felts decided to sell their home because of their concern about the impacts from North Eldridge Parkway. In December 1987, they put their house on the market. They originally listed the property for sale at $165,000, and later dropped the price to $119,500. In September 1990, the Felts' home was sold at $119,500 to John Ewen.

In 1990, Kvinta reappraised the Felts' property for appellant and again found damages to their property caused by the proximity of the North Eldridge Parkway. Appellant refused to make an offer based on the appraisal it had commissioned. The Felts then filed this inverse condemnation action to recover their damages.

On September 4, 1992, the Felts filed their Fourth Amended Original Petition alleging causes of action for inverse condemnation and nuisance against Harris County. On September 14, 1992, the case was called to trial. After a three day trial, the jury found that the Felts' property was damaged and

awarded them $15,645.00 in damages. The trial court found that Harris County's North Eldridge Parkway project damaged the Felts' property within the meaning of Article I, Section 17 of the Texas Constitution in the amount of $15,645.00 and entered judgment on the jury's verdict in favor of appellees. On September 30, 1992, Harris County filed its Motion for Judgment Notwithstanding the verdict, which the trial court denied on October 16, 1992.

## POINT OF ERROR ONE

THE TRIAL COURT ERRED AS A MATTER OF LAW IN ITS SUBMISSION OF JURY QUESTION NUMBER 1 BECAUSE THERE WAS NO EVIDENCE OF AN INVERSE CONDEMNATION CAUSE OF ACTION UNDER ARTICLE I, SECTION 17 OF THE TEXAS CONSTITUTION

## POINT OF ERROR TWO

THE TRIAL COURT ERRED AS A MATTER OF LAW IN OVERRULING THE COUNTY'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT BECAUSE THERE WAS NO EVIDENCE OF AN INVERSE CONDEMNATION CAUSE OF ACTION UNDER ARTICLE I, SECTION 17 OF THE TEXAS CONSTITUTION.

 Article I, Section 17 of the Texas Constitution provides that "[n]o person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made . . . ." Condemnation is the process by which property of a private owner is taken for public use, without consent, but upon the payment of just compensation. An inverse condemnation may occur when the government physically appropriates or invades the property, or when it unreasonably interferes with the landowner's right to use and enjoy the property, such as by restricting access or denying a permit for development. *Westgate, Ltd. v. State*, 843 S.W.2d 448, 452 (Tex.1992). To recover under the theory of inverse condemnation, the property owner must establish that: 1) the governmental entity intentionally

performed certain acts; 2) that resulted in a taking of property; 3) for public use. *Waddy v. City of Houston*, 834 S.W.2d 97, 102 (Tex.App.—Houston [1st Dist.] 1992, writ denied); *City of Abilene v. Smithwick*, 721 S.W.2d 949, 951 (Tex.App.—Eastland 1986, writ ref'd n.r.e.).

■ The second element, whether the actions of the County constituted a taking, is the paramount issue addressed here. Texas courts have considered this element before. In *Westgate*, 843 S.W.2d at 450, the Supreme Court was asked to consider whether the government appropriated Westgate's property during the period between the announcement of the project and when the government actually acquired the property by (1) failing to warn of the expansion project which would affect its newly constructed shopping center and (2) unreasonably delaying acquisition after the project was announced. The Court held that a landowner could not recover damages for inverse condemnation under Article I, Section 17 of the Texas Constitution where the government had not physically appropriated, denied access to, or otherwise directly restricted the use of the landowner's property. "Direct restriction", as used in that case, referred to an actual physical or legal restriction on the property's use, such as a blocking of access or denial of a permit for development. *Id.* at 452. Appellees in this case are claiming the government appropriated their property by (1) building the Parkway in close proximity to their property, (2) by increasing the noise at their property due to the construction activities and (3) by increasing the dust on their property also due to the construction activities. Under the reasoning of the *Westgate* case, appellees cannot recover damages for inverse condemnation under Article I, Section 17 of the Texas Constitution because no land was physically appropriated. Appellees were never denied access to their property, nor was there any direct restriction on the use of their property.

The Supreme Court in *Westgate* stated that its holding was supported by sound public policy. "Construction of public-works projects would be severely impeded if the government could incur inverse-condemnation liability merely by announcing plans to condemn property in the future." *Westgate*, 843 S.W.2d at 453. Likewise in this case, construction of new roads would be virtually halted if the government could incur inverse-condemnation liability by everyone affected by the construction of a new road. A frequently used quote by Texas Courts appropriately defines the rights of parties adjacent to construction projects by stating:

> [t]he inconvenience and damage which a property owner suffers from these temporary obstructions are incident to city life and must be endured. The law gives him no right to relief, recognizing that he recoups his damage in the benefit which he shares with the general public in the ultimate improvement which is being made.

*City of Austin v. Avenue Corp.*, 704 S.W.2d 11, 12 (Tex.1986), quoting *L–M–S Inc. v. Blackwell*, 149 Tex. 348, 233 S.W.2d 286, 289 (Tex.1950), quoting in turn *Farrell v. Rose*, 253 N.Y. 73, 170 N.E. 498 (1930); *Smith v. Merritt*, 277 S.W.2d 801, 802 (Tex.Civ.App.—Beaumont 1955, no writ).

The question of a taking was also an issue in *Allen v. City of Texas City*, 775 S.W.2d 863 (Tex.App.—Houston [1st Dist.] 1989, writ denied). The property owners in that case brought an inverse condemnation action against the city for alleged damages sustained by construction of a levee. The Court stated that "Texas law defines such taking, damage, or destruction as (1) actual physical appropriation or invasion of the property, or (2) unreasonable interference with the land owner's right to use and enjoy his property." *Id.* at 865. The property owner in *Allen* argued that the completed levee interfered with his property by causing a decrease in its fair market value. *Id.* However, the Court held that "neither a fall in fair market value, nor an increased susceptibility to flooding, constitutes an actual physical appropriation or invasion of property, or an unreasonable interference with the land owner's use or enjoyment of the property". *Id.* Accordingly, the appellees' claim that their property decreased in value as a result of the Parkway project does *not* constitute a taking under the Texas Constitution. There was no physical appropriation of appellees' property for

purposes of the Parkway project, nor was there any invasion of property. Appellees contend that the dust and dirt associated with the construction of the road was a physical appropriation of their property. Not a single reported decision has permitted recovery for construction activities such as dust, dirt and noise. Moreover, no evidence presented at the trial court demonstrates that the interference appellees purportedly suffered was in any way unreasonable in connection with a construction project of this magnitude.

■ Whether a taking or damaging has occurred under Article I, Section 17 of the Texas Constitution is a question of law. *Du-Puy v. City of Waco,* 396 S.W.2d 103, 110 (Tex.1965); *Woodson Lumber Company v. City of College Station,* 752 S.W.2d 744, 747 (Tex.App.—Houston [1st Dist.] 1988, no writ); *Waddy v. City of Houston,* 834 S.W.2d at 102; *Estate of Scott v. Victoria County,* 778 S.W.2d 585, 587 (Tex.App.—Corpus Christi 1989, no writ). Before the charge was submitted to the jury, the County's counsel informed the trial judge that whether there was a taking or damaging is a question of law. However, the Court overruled the County's objections and left it to the jury's determination whether or not there were facts sufficient to determine that there had been a taking or damaging under the Constitution of the State of Texas.

■ The proper procedure to be followed in a case of this type is that once the presentation of the evidence was completed, the trial judge, not the jury, should have decided whether there was a compensable taking under the Texas Constitution. Only if the Court answered that question in the affirmative should the court have submitted an issue concerning the amount of damages. Only then would this case have been decided in accordance with Texas law. *See, Estate of Scott,* 778 S.W.2d at 587.

There was no evidence to support the jury's finding that appellees' property was damaged by the construction of the Parkway under Article I, Section 17 of the Texas Constitution and such question, as a matter of law, should never have been submitted to the jury. In addition, even if it was error for the court to submit that question, the trial court erred in overruling the county's Motion for Judgment Notwithstanding the Verdict because there was no evidence to support a claim for inverse condemnation under Article I, Section 17 of the Texas Constitution.

The appellee is correct in that there are Texas cases on noise vibration, smoke and noxious vapors and cinders from the operation of railroad trains. Those cases date back to 1890. We view steam engines of the early days in much different light than automobiles as steam engines emit smoke, vibrations, fire, dust ashes, and cinders.

Points of error number one and number two are sustained. In view of our disposition of points one and two we do not address point of error number three on damages.

The judgment of the trial court is reversed and rendered.

DRAUGHN, Justice, dissenting.

I respectfully dissent. The majority opinion gives *almost* complete deference to Article 1, Section 17 of the Texas Constitution, which provides that "No person's property shall be taken, *damaged* or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person; ..." I say "almost" because in its analysis of this constitutional provision, and in its haste to find no "taking" of the Felts' property on which to anchor its reversal, the majority opinion conveniently ignores the word "damaged" which shares equal prominence with the word "taken" in the provision. The majority opinion states that the paramount issue here is whether the actions of the County constituted a "taking" of the Felts' property. I submit that the decisive issue here is whether the Felts presented sufficient credible evidence to warrant the jury's finding that the actions of the County "damaged" their property and that they should be awarded just compensation therefor. There is no question that the appellees' burden was a difficult one, but after a review of the evidence and the circumstances of this case, I find that they have met their burden and the judgment should be affirmed.

The majority opinion accurately summarizes the facts, so I will not dwell on them except to expand them where necessary to my dissent. I now review the County's points of error and the evidence in this case.

In its first point of error, appellant contends that the trial court erred as a matter of law in its submission of jury question number one because there was no evidence of an inverse condemnation cause of action under Article I, § 17 of the Texas Constitution. In reviewing this no evidence point, we must consider only the evidence and inferences that support the trial court's finding and disregard all evidence and inferences to the contrary. *Lewelling v. Lewelling*, 796 S.W.2d 164, 166 (Tex.1990). If there is more than a scintilla of evidence to support the finding, the no evidence point must fail. *See Stafford v. Stafford*, 726 S.W.2d 14, 16 (Tex. 1987).

In the present case, the following questions were submitted to the jury:

### JURY QUESTION NO. 1

Do you find that the plaintiff's property at 12310 William Dowdell was damaged by the defendant's North Eldridge Parkway project?

You are instructed that a property is damaged within the meaning of the Texas Constitution if there is an actual physical invasion of the property or an unreasonable interference with the owners' right to the use and enjoyment of such property.

You are further instructed that the damaging, if any, must have occurred prior to September 11, 1990, the date the plaintiffs sold the property in question.

Answer "Yes" or "No"

Answer: ___Yes___

If you have answered Question No. __1__, "Yes", and only in that event, then answer:

### JURY QUESTION NO. 2

What is the difference, if any, between the market value of the land and the improvements at 12310 William Dowdell immediately before and immediately after Defendant constructed its North Eldridge Parkway project?

You are instructed that in determining the decrease, if any, in market value of the property located at 12310 William Dowdell, you may consider only the injuries or benefits, if any, that are special and particular to the property caused by defendant's North Eldridge Parkway project, and you may not consider the injuries or benefits, if any, that are sustained in common with the entire community or neighborhood.

The fact that other property on the same street was damaged or benefited in the same way does not exclude such damage or benefit from your consideration; it is only when the effect is general, and not direct and specific, upon particular property, that it may not be considered.

Answer in dollars and cents.

Answer: $ 15,645.00

At trial, appellant made several objections to the jury charge. While appellant did not object to Instruction 1, it objected to Question No. 1 and tendered a requested charge to the trial judge. As to Question No. 1, appellant objected as follows because of: (1) no instruction as to what Article 1, Section 17 provides; (2) no instruction on the word "taking"; (3) no instruction on "public purpose"; and (4) no instruction on the meaning of "taking, damaged or destroyed," as used in the charge.

On appeal, appellant argues that there was no evidence of an inverse condemnation action to support submission of Question No. 1 to the jury. Objections made on appeal that do not conform to those made at trial are waived. *See* Tex.R.Civ.P. 274; *Texaco, Inc. v. Pennzoil Co.*, 729 S.W.2d 768, 819, 820, 828 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.) *cert. dismissed*, 485 U.S. 994, 108 S.Ct. 1305, 99 L.Ed.2d 686 (1988); *Conner v. Bean*, 630 S.W.2d 697, 701 (Tex.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.). Since appellant's argument regarding Question No. 1 does not conform to its objections at trial, appellant has waived all allegations of error.

Even assuming no waiver, the trial court's alleged error was not reasonably calculated to cause and probably did not cause rendition of an improper judgment in this case; and thus, would be harmless. Tex.R.App.P. 81(b).

In its second and third points of error, appellant asserts that the trial court erred as a matter of law in overruling its motion for judgment notwithstanding the verdict. Specifically, appellant argues that there was no evidence: (1) of an inverse condemnation cause of action under Article I, § 17 of the Texas Constitution; and (2) to support the jury's finding of $15,645 in actual damages to appellees.

In its Motion For Judgment Notwithstanding The Verdict, appellant stated that the evidence at trial showed only community damages which are not compensable. Appellant argued that appellees would be entitled to judgment only if the jury believed that they were the only homeowners that suffered from the dust, noise, and dirt generated during the construction of the North Eldridge Parkway project. Appellant also argued that there was no "taking," "damaging," or "destroying," of appellees' property within the meaning of the Texas Constitution. Alternatively, appellant argued that if there was a taking or damaging, there was no "public purpose" involved, which is required by the Texas Constitution.

The evidentiary standards relative to appellant's motion for judgment notwithstanding the verdict (n.o.v.) are clear. A trial court may disregard a jury's answer only if a directed verdict would have been proper. TEX.R.CIV.P. 301; *Allison v. Parks*, 763 S.W.2d 606, 608 (Tex.App.—Fort Worth 1989, writ denied). In turn, a directed verdict would be appropriate only if the issue was conclusively established as a matter of law. If there is any evidence of probative force supporting the issue, a motion for judgment n.o.v. must be overruled. *Dunlop Tire & Rubber Corp. v. Slack*, 276 S.W.2d 400, 401 (Tex.Civ.App.—Fort Worth 1955, no writ).

A trial court may render a judgment n.o.v. if there is no evidence to support one or more of the necessary jury findings. TEX. R.CIV.P. 301; *Best v. Ryan Auto Group, Inc.*, 786 S.W.2d 670, 671 (Tex.1990). When considering a no evidence point, the appellate court must consider only the evidence and reasonable inferences that tend to support the jury's findings. *King v. Bauer*, 688 S.W.2d 845, 846 (Tex.1985). If the court finds more than a scintilla of evidence that supports the jury findings, the court must uphold the findings. *James v. Vigilant Ins. Co.*, 674 S.W.2d 925, 926 (Tex.Civ.App.—Amarillo 1984, writ ref'd n.r.e).

"Condemnation" is the process by which property of a private owner is taken for public use, without consent, but upon the payment of just compensation. *Hubler v. City of Corpus Christi*, 564 S.W.2d 816, 820 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e). "Inverse condemnation" occurs when property is taken, damaged, or destroyed for public use without process or without proper condemnation proceedings, and the property owner attempts to recover compensation. *City of Abilene v. Burk Royalty Co.*, 470 S.W.2d 643, 646 (Tex.1971); *Allen v. City of Texas City*, 775 S.W.2d 863, 864 (Tex.App.—Houston [1st Dist.] 1989, writ denied).

A "taking," of property within the meaning of the Texas Constitution is: (1) an actual appropriation or invasion of the property; or (2) an unreasonable interference with the land owner's right to use and enjoy his property. *Allen*, 775 S.W.2d at 865. A "damaging" within the meaning of the Constitution imports that the property involved has been injuriously affected without the appropriation of or intrusion upon the land itself. *Nueces County Drainage & Conservation Dist. No. 2 v. Bevly*, 519 S.W.2d 938, 944 (Tex.Civ. App.—Corpus Christi 1975, writ ref'd n.r.e); *Scott v. City of Robinson*, 404 S.W.2d 330, 332 (Tex.Civ.App.—Waco 1966, writ ref'd n.r.e).

In their fourth amended original petition, appellees alleged that the following facts constituted a taking and damaging of private property for a public purpose under Article 1, § 17 of the Texas Constitution:

Before North Eldridge Parkway was constructed by Harris County, the property owned by the Felts at 12310 William Dowdell ("the Property") was situated in a serene setting, characterized by peace and quiet, and was free of dust, fumes, and high levels of carbon monoxide. The Property had qualities and characteristics that made it ideal for residential use. These qualities and characteristics have been

*damaged* by the construction and operation of North Eldridge Parkway. Noise, dust and dirt generated during the construction of North Eldridge Parkway adversely impacted and directly restricted the residential use of the Property. In addition, North Eldridge Parkway has been projected to carry several thousand cars each day in very close proximity to the Property. This traffic carried by will emit dust, fumes, and carbon monoxide which will directly restrict and substantially interfere with the use of the Property for residential purposes. The traffic also will generate noise levels that will substantially interfere with the use of the Property for residential purposes. The noise, dust, dirt and fumes have and will continue to directly invade the Property. Finally, safety concerns, including crashes, are posed by reason of North Eldridge Parkway's proximity to the Property.

In effect, appellees plead that they were entitled to just compensation for the damages done to the property by the North Eldridge Parkway project. I note that appellees concede that there was no actual "taking" of their property, but rather that there was a "damaging" of their property. Furthermore, the trial court submitted only the issue of the "damaging" of property to the jury.

However, contrary to the majority's hypertechnical analysis, direct *physical* appropriation or invasion of property is not required under the present provisions of Article 1, § 17 of the Texas Constitution to entitle an owner to compensation. TEX.CONST. art. 1, § 17; *State v. Biggar*, 873 S.W.2d 11, 13 (Tex.1994) (citing *Gainesville, H. & W.R. Co. v. Hall*, 78 Tex. 169, 14 S.W. 259 (1890)); *see also Dupuy v. City of Waco*, 396 S.W.2d 103, 108 (Tex.1965). An owner may also be compensated when his property was directly *damaged or destroyed* by the construction of a public work, although no part of it was actually appropriated or invaded. *Id.* The majority opinion seems to discredit these precedents because one of them dates back to 1890, and at that time, involved "steam engines of the early days." The age of a precedent and the type of mechanism that emits the damaging noise and dust is irrele-

vant. Regardless of the offending instrument, it is the provable damage that determines the issue.

In the present case, the dispositive issue is whether there was a "damaging" of appellees' property within the meaning of Article 1, § 17 of the Texas Constitution. The appellees' burden was to prove by a preponderance of the evidence that the alleged invasion of noise, dust, and dirt generated during construction of the North Eldridge Parkway onto appellees' property give rise to an inverse condemnation action. I now review the evidence in that regard.

At trial, the following four witnesses testified on behalf of appellees: Mary Taylor Felts, Robert Watts, Steven Gee, and William D. "Bill" Kvinta. Steven Gee, a traffic noise specialist, testified that he was retained by Harris County in December 1989 to conduct a traffic noise study on the impacts of North Eldridge Parkway. He also testified that he was specifically asked to look at the Tompkins' home, which is one lot north of the Felts' home. He further testified that in January 1990, he made his determination of what those traffic noise impacts would be, based on information provided by the Harris County Attorney's Office. He stated that he had conducted possibly 20 traffic noise studies during his more than seven years employment with the Texas Highway Department. He also agreed that when a road is proposed and being constructed, it is customary to do an environmental study to determine what those noise impacts are going to be from the traffic that will by using that roadway.

Gee testified that it is important to study traffic noise impacts on people because noise can have a detrimental effect on them and could cause health problems, particularly to people who are sensitive to excessive noise. He also testified that a home would be a sensitive receptor. He further testified that it is important to determine the "baseline," which is the existing noise level out at the property without the road being built. He stated that he inputs all the information into a program, and it generates the future noise levels at various locations away from the right-of-way or the roadway. He also stated

that 10 decibels is considered a significant impact under the State Highway Department guidelines for noise impacts. He further stated that as a noise expert, he would recommend once you determine there's a significant impact, to look at noise walls or some sort of barrier that will reduce the impact to the property.

Gee testified that there is a rule of thumb that they use in determining noise levels, and they could determine what the existing noise levels were on the Felts' home in December 1989. He then testified that he would estimate the noise levels on the Felts' property to be approximately 42 to 43 decibels, which is 3 to 4 decibels louder than it was at the Tompkins' property. He also testified that in terms of loudness, the Felts' current noise level was a very quiet situation. He further testified that since the roadway would be closer to the Felts' property or house, the noise levels would be higher at their house than it would be at Tompkins' house. He stated that the exterior noise level would probably go from 42 to 43 decibels to 61 or 62 decibels on the Felts' property, which is roughly a 20 decibel increase in noise level. He also stated that noise levels four times as loud is considered a significant and severe impact in his industry. He stated that anything over 10 decibels or two times as loud is considered a significant impact. He further stated that noise mitigation would be required under the Texas noise guidelines. He also testified that with respect to the Felts' home, he would recommend the same type of noise barrier that he did down the street.

Gee testified that noise has physical and invasive properties. He agreed that the noise radiates from the source and invades the adjoining property. While referring to Plaintiff's Exhibit 23, he testified that the more intense noise would be right above the actual vehicles and radiate out and invade the property formerly owned by the Felts. He also testified that if there's a loud enough sound, you can break a glass if you let it hit the right noise note. He further testified that the noise impacts are different, and his recommendation is different depending on the type of use to which the property is applied. He stated that those impacts would

be special to those homes. He also stated that the impacts at the Felts' home is "potential" if that home is on that property. We note that it is undisputed that the word "potential" was mistranscribed for the word "special." We also note that Appellant's counsel objected to the use of "special" because it was not a legal definition, but a sound expert definition. Gee further stated that he would not recommend noise abatement on a vacant lot because there are no noise receptors.

On redirect examination, Gee testified that the Felts' neighbor across the street is some good distance away from North Eldridge Parkway. He also testified that he would not recommend a noise wall be built there because he didn't see the noise impact there that he saw on the Felts' property. He also admitted that based on the same conditions, the noise impacts just across the street at the neighbor's house was not going to be the same and not going to be as severe as they are on the Felts' property, which is right on the highway.

William D. "Bill" Kvinta testified at trial as appellees' appraisal witness. He testified that he originally appraised the property at 12310 William Dowdell for Harris County to determine the compensation to which the Felts' were entitled. He also testified that he first looked at the Felts' property back in 1987 when he did the first appraisal and again in 1990. He further testified that Harris County asked him to appraise five pieces of property, including the Felts' tract, in that neighborhood, and he completed all of the appraisals. He then testified that without the North Eldridge Parkway there in July 1987, he appraised the Felts' whole property at $153,645. He stated that he found damages of $16,240 to the Felts' home because of the North Eldridge Parkway project. He also stated that he found the fair market value of the Felts' home in 1990 to be $135,145. He then stated that the second time he went out there, he found damages of $19,740, which it will cost to install a concrete wall across the rear 100 feet on one side and 50 feet on the other side. He testified that if he subtracted the damages from the value of the property without the parkway, the value of

the house with the parkway would be $115,405.

Kvinta testified that he was aware, based on his appraisal work with Harris County, the City of Houston, and the Harris County Right–of–Way Department, that in a condemnation case, he takes into account special damages to the property and disregards community damages. He also testified that of the five properties appraised out on Eldridge, he found damages to two of them. He further testified that there were two parcels that had houses on them, and he thought that both houses would not be as good as they were before the taking. He stated that the vacant land, if anything, was probably enhanced. He also stated that he thinks the Felts' house and the Tompkins' house down the curve were taking a hit with the road. He further stated that the damages suffered by the Felts' property were "specific" damages.

On cross-examination, Kvinta testified that the way he understands community and specific damages, if a particular piece of property is of a particular damage that was of a particular nature, then it's a specific. He stated that if all the parcels up and down the road are damaged, then it would be community. On re-direct examination, he testified that his figure of $19,740 was damages only and did not include anything for the taking.

After appellees' rested their case, appellant called the following three witnesses on its behalf: Debra Foxworth, Joe Stanfield, and Jack Randorff. Joe Stanfield, an independent real estate appraiser, testified that Harris County hired him to do the appraisal of the Felts' property. He testified that the first time he went out to see the property was October 1991, and he had gone out to see it probably four or five times.

On cross-examination, Stanfield testified that he found the market value of the Felts' home to be $119,500 with the North Eldridge Parkway. He admitted that he never saw the property before the North Eldridge Parkway, and he did not have an opinion with respect to the market value of the Felts' property before the North Eldridge Parkway. He testified that 12315 William Dowdell, the house right across the street from

the Felts, was in the same community as the Felts' property. He admitted that the broker's opinion was that the house directly across the street on the other side of William Dowdell was not affected or influenced by the Parkway project. He then stated that he agreed with the broker's opinion.

Jack Randorff testified as an acoustical engineering expert for appellant. He testified that he did a noise analysis out at the property previously owned by the Felts. He stated the Harris County Attorney's Office hired him to do the noise analysis at 12310 William Dowdell. On cross-examination, he testified that his measurements out at the Felts' property were 55 decibels, and he found the primary source of noise to be from Cypress North Houston. He had already admitted on direct examination that he made his determination in October 1991 after Harris County had cleared all brush, vegetation, and trees through the 100 feet and replaced all of those trees, vegetation, and ground with concrete. He testified that he would expect existing noise levels to be probably 5 decibels less if all the brush, trees, and vegetation were in place.

On cross-examination, Randorff admitted the a 10 decibel increase is a significant impact. He testified that looking at the existing noise level of 55 decibels at the Felts' property, he found a significant impact before the barrier. He agreed that starting with 55 decibels is a significant impact, and there would be an increase of over 13 decibels by the year 2007 with no barrier in place.

Randorff also testified on cross that noise has physical properties and moves in sound waves as shown on the exhibit prepared by him (Defendant's Exhibit 30). He testified that these physical properties spread out onto adjoining properties and have invasive qualities.

I note that sixty exhibits were offered and admitted into evidence at trial. After hearing all of the evidence, the jury returned an unanimous verdict finding that the Felts' property had been damaged in the amount of $15,645. The trial court entered judgment on the jury's verdict. In the judgment, the

trial court found that to the extent the question of damage under the Texas Constitution is one of law, that appellant's North Eldridge Parkway project damaged the Felts' property within the meaning of Article I, Section 17 of the Texas Constitution in the amount of $15,645.

I agree with appellant and the majority opinion that appellees' claims regarding the invasion of the noise, dust, and dirt did not amount to a "taking" of their property. However, appellees' allegations did state a viable claim for the "damaging" of their property. There was much more than a scintilla of evidence that appellees' property was *damaged* within the meaning of Article 1, § 17 of the Texas Constitution. Thus, I would find that appellees stated a compensable claim upon which relief could be granted under Article 1, § 17 of the Texas Constitution.

However, appellant still contends there is no evidence of compensable damages suffered by appellees as a matter of law. Specifically, appellant argues that there is no evidence that appellees suffered injuries from the alleged dust, dirt, and noise that were peculiar to their property.

An injury or benefit, which is peculiar to the property owner and relates to the owner's ownership, use, or enjoyment of the land, may be considered in estimating damages. TEX.PROP.CODE ANN. § 21.042(d) (Vernon 1984); *Olson v. Harris County*, 807 S.W.2d 594, 595 (Tex.App.—Houston [1st Dist.] 1990, writ denied). However, an injury or benefit experienced in common with the general community may not be considered in estimating damages. *Id.* Whether an injury is community cannot be decided simply by setting the size of the relevant area. *State v. Schmidt*, 867 S.W.2d 769, 781 (Tex.1993). "Community" in this context means not only where, but more importantly, what kind. *Id.* It is the nature of the injury rather than its location that is critical in determining whether it is community. *Id.*

Community injuries *may* include highway traffic noise, dust, traffic hazards, and circuitous routes, which would not compensable. *Olson*, 807 S.W.2d at 595; *see, e.g., State v. Wood Oil Distrib., Inc.*, 751 S.W.2d 863, 865

(Tex.1988); *State v. Wilson*, 439 S.W.2d 134, 139 (Tex.Civ.App.—Tyler 1969, no writ); *State v. South Main Baptist Church*, 361 S.W.2d 898, 901 (Tex.Civ.App.—Houston [1st Dist.] 1962, writ ref'd n.r.e). However, these same injuries could be compensable if the property owner proved that the damages were special and particular to his property.

Here, I note that the trial court specifically instructed the jury that they could consider "only the injuries or benefits, if any, that are special and particular to the property caused by Defendant's North Eldridge Parkway project," and could "not consider the injuries or benefits, if any, that are sustained in common with the entire community or neighborhood." Further, the jury was instructed that "the fact that other property on the same street was damaged or benefited in the same way does not exclude such damage or benefit from their consideration; it is only when the effect is general, and not direct and specific, upon particular property, that it may not be considered." Following these instructions, the jury found $15,645 in damages that were special to appellees' property.

In this case, appellees claimed that the impact of the noise, dust, and dirt from the subject parkway affected them in a special way, different from the other properties in their neighborhood. At trial, the noise experts for both appellant and appellee testified that appellees had suffered significant noise impacts from North Eldridge Parkway and that a noise barrier should be constructed on appellees' property. There was also evidence that appellees' property was damaged by $19,740, the amount equal to the cost to construct a noise wall to protect the property. Moreover, the evidence was conclusive that the damages suffered by appellees were special and peculiar to their property, and not suffered in common with the community generally. Thus, appellees' complained of damages to their property would be compensable by law.

Because there is much more than a scintilla of evidence that appellees' property was damaged by appellant's North Eldridge Parkway project and that those damages were special and particular to them, there is

sufficient evidence to support the jury's findings on inverse condemnation and damages. In this regard, I simply do not agree with appellant's and the majority's conclusion that to affirm this judgment would open the floodgate for inverse condemnation lawsuits, thus making the costs of public projects prohibitive. This case comes to us on special facts and proof, and a decision affirming it would be so limited. The burden of proving special, unique damages based on location, which is sufficient to separate it from community damages, is not an easy one. I do not see the "sky falling" on worthy public projects if this case, based on these limited facts, were affirmed.

In any event, I find appellees have carried their difficult burden of proof in this case and the evidence is sufficient. I would find, therefore, that the trial court correctly overruled appellant's Motion for Judgment Notwithstanding the Verdict, and would affirm the judgment of the trial court.