In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

NO. 06-04-00061-CV
______________________________


DON DENMAN AND PEGGY DENMAN, Appellants
 
V.
 
SND OPERATING, L. L. C., Appellee


                                              

On Appeal from the 124th Judicial District Court
 Gregg County, Texas
Trial Court No. 2000-1993-B


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Chief Justice Morriss


O P I N I O N
            The central question in this case—brought by Don and Peggy Denman against SND
Operating, L. L. C., complaining of unused pipelines, oil field equipment, and oil spills on land they
purchased—is whether the Denmans have standing to bring the claims.


 The trial court granted
SND's plea to the jurisdiction as to all claims, except the Denmans' claim under the Texas Litter
Abatement Act, and later granted SND a summary judgment concerning the Texas Litter Abatement
Act claim.
            We affirm in part and reverse and remand in part. We hold (1) the Denmans timely filed
their notice of appeal; (2) the Denmans had standing to sue for injuries to their land occurring after
they purchased their property—thus requiring a partial reversal and remand—but not for pre-existing
injuries; (3) the Denmans did not plead a claim under Section 85.322 of the Texas Natural Resources
Code; and (4) the Texas Litter Abatement Act does not apply.
(1)       The Denmans Timely Filed Their Notice of Appeal
            In a threshold issue for this appeal, SND argues the Denmans failed to timely appeal both the
plea to the jurisdiction and the summary judgment. According to SND, the claims dismissed through
the plea to the jurisdiction became final in December 2003 and, therefore, the notice of appeal should
have been filed sometime in January 2004. In addition, SND claims the notice of appeal concerning
the  Texas  Litter  Abatement  Act,  which  was  filed  May  11,  2004,  was  untimely  since  it  was
due May 7, 2004. We conclude that notice of appeal was timely filed for both orders. No written
order severing the tort claims was signed until April 7, 2004, which was the same day the trial court
granted summary judgment concerning the Texas Litter Abatement Act. Therefore, both notices of
appeal were due May 7, 2004. Under the mailbox rule, the notice of appeal was timely.
            The general rule is that an appeal may be taken only from a final judgment. Lehmann v.
Har-Con Corp., 39 S.W.3d 191, 195 (Tex. 2001). A judgment is final for purposes of appeal if it
disposes of all parties and all pending claims, except for matters necessary to carry out the decree.
Id. When an otherwise final judgment fails to dispose of all parties, the trial court may make the
judgment final by severing parties and causes disposed of. Martinez v. Humble Sand & Gravel, Inc.,
875 S.W.2d 311, 312 (Tex. 1994); Vanderwiele v. Llano Trucks, Inc., 885 S.W.2d 843 (Tex.
App.—Austin 1994, no writ). There is no appeal from a partial summary judgment unless there is
an order of severance. Schlipf v. Exxon Corp., 644 S.W.2d 453, 454 (Tex. 1982).
            Even if the causes were severed before the written order was signed,


 the time period to
appeal the causes of action which were severed did not begin to run until the order was signed. See
Eddins v. Borders, 71 S.W.3d 368, 370 (Tex. App.—Tyler 2001, pet. denied). Therefore, the time
period for filing a notice of appeal for the severed actions did not begin running until April 7, 2004.
            SND argues that all of the claims except the Texas Litter Abatement Act became final in
March 2003. While SND did file a motion to sever March 5, 2003, the record on appeal contains
no  written  order  on  the  motion  for  severance  except  for  the  severance  order  which  was
signed April 7, 2004.


 The time period for filing a notice of appeal begins when a written judgment
is signed. See Tex. R. Civ. P. 306a; Tex. R. App. P. 26.1; see also Walker, 597 S.W.2d at 915. 
Therefore, the notice of appeal for both causes of action was due May 7, 2004. The district clerk
received the Denmans' notice of appeal May 11, 2004. "A document received within ten days after
the filing deadline is considered timely filed if . . . it was deposited in the mail on or before the last
day for filing." Tex. R. App. P. 9.2(b)(1). Under the "mailbox rule," the notice of appeal was timely
filed.
(2)       The Denmans Had Standing To Sue for Injuries to Their Land Occurring After They
Purchased Their Property but Not for Pre-existing Injuries
            In their first and second points of error, the Denmans contend the trial court erred in granting
the plea to the jurisdiction concerning their negligence, negligence per se, nuisance, trespass, and
unjust enrichment causes of action because they alleged new injuries occurred after they purchased
their property. The Denmans identify several injuries occurring since they purchased the property:
(1) damage to their tractor and farm equipment from coming in contact with oil and gas production
equipment; (2) unreasonable and unnecessary use of the surface by SND since the Denmans have
owned the property; (3) discharge of hydrocarbons or toxic materials on the property since the
Denmans have owned the property; (4) inability to clear, cultivate, plant, or build on the property;
and (5) an inability to obtain financing on the property or use the property as collateral.
            A plea to the jurisdiction challenges a trial court's subject-matter jurisdiction over the
controversy. Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 554 (Tex. 2000). "A plea to the
jurisdiction is a dilatory plea, the purpose of which is to defeat a cause of action without regard to
whether the claims asserted have merit." Id. Standing is a necessary component for a court to have
subject-matter jurisdiction. Tex. Ass'n of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 445–46
(Tex. 1993); see M.D. Anderson Cancer Ctr. v. Novak, 52 S.W.3d 704, 708 (Tex. 2001). Whether
the trial court had subject-matter jurisdiction is a question of law subject to de novo review. Tex.
Natural Res. Conservation Comm'n v. IT-DAVY, 74 S.W.3d 849, 855 (Tex. 2002); Cook v. Exxon
Corp., 145 S.W.3d 776, 780 (Tex. App.—Texarkana 2004, no pet.). Accordingly, we review de
novo the trial court's determination of standing. We construe the pleadings in favor of the pleader
and look to the pleader's intent. Tex. Air Control Bd., 852 S.W.2d at 446. We will review only the
matters presented to the trial court. Huston v. Fed. Deposit Ins. Corp., 663 S.W.2d 126, 129 (Tex.
App.—Eastland 1983, writ ref'd n.r.e.).
            Only the person whose primary legal right has been breached has standing to seek redress for
an injury. Nobles v. Marcus, 533 S.W.2d 923, 927 (Tex. 1976); Cook, 145 S.W.3d at 780. In other
words, a person has standing to sue only when he or she is personally aggrieved by an alleged wrong. 
Nootsie, Ltd. v. Williamson County Appraisal Dist., 925 S.W.2d 659, 661 (Tex. 1996). "Without
a breach of a legal right belonging to a plaintiff, that plaintiff has no standing to litigate." Denman,
123 S.W.3d at 732; Brunson v. Woolsey, 63 S.W.3d 583, 587 (Tex. App.—Fort Worth 2001, no
pet.).
            The Denmans must have a cause of action for injury to the property in order to have standing. 
Denman, 123 S.W.3d at 732; see Nobles, 533 S.W.2d at 927 (citing Am. Nat'l Ins. Co. v. Hicks, 35
S.W.2d 128 (Tex. Comm'n App. 1931, judgm't adopted)). The cause of action for an injury to
property belongs to the person owning the property at the time of the injury. Lay v. Aetna Ins. Co.,
599 S.W.2d 684, 686 (Tex. Civ. App.—Austin 1980, writ ref'd n.r.e.). Without express assignment,
the cause of action does not pass to a subsequent purchaser of the property, so he or she cannot
recover for an injury committed before his or her purchase. Id. 
            SND relies on Senn v. Texaco, Inc., 55 S.W.3d 222 (Tex. App.—Eastland 2001, pet. denied),
Exxon Corp. v. Pluff, 94 S.W.3d 22 (Tex. App.—Tyler 2002, pet. denied), and Denman, 123 S.W.3d
728. These cases all hold that the cause of action for injuries to property belongs to the owner of the
property at the time of the alleged injuries and that subsequent purchasers lack standing to sue,
absent an express provision in the deed granting them that power. Denman, 123 S.W.3d at 734;
Pluff, 94 S.W.3d at 28; Senn, 55 S.W.3d at 226.
            In Senn, the Eastland Court of Appeals regarded the distinction between temporary and
permanent injuries as meaningless with respect to the issue of standing. Senn, 55 S.W.3d at 226. 
The court found that "any injury to the land that the defendants might have caused, whether
temporary or permanent, occurred prior to the Senns' purchase of the land," and the Senns, therefore,
did not own any causes of action for either type of injury that may have been caused by the
defendants. Id.
            Adopting the reasoning of the Eastland Court of Appeals decision in Senn, the Tyler Court
of Appeals held that, when the undisputed evidence "showed a continuing condition that already
existed on the date of purchase" and no new injuries occurred after purchase of the property or an
assignment of a cause of action for the prior injury, "the [plaintiff] had not been aggrieved and
therefore had no standing." Pluff, 94 S.W.3d at 28. Similarly, this Court held in Denman and Cook
that the plaintiffs lacked standing when any injury to the property occurred before the plaintiffs
purchased the property and their deeds contained no assignment of any cause of action. Cook, 145
S.W.3d 776; Denman, 123 S.W.3d at 734–35. 
            The Eastland Court of Appeals stated in Senn that "[t]he distinction between temporary and
permanent damages is meaningless with respect to the issue of standing." Senn, 55 S.W.3d at 226. 
We agree with the Eastland Court of Appeals that the primary concern in deciding standing is
whether a new injury has occurred since the landowner has acquired the property in question. But
we disagree that the distinction between temporary and permanent injuries


 is necessarily irrelevant. 
The relevant inquiry is when the cause of action accrued. "A temporary injury is essentially a series
of injuries which occur over time." Cook, 145 S.W.3d at 784; cf. Bates, 147 S.W.3d at 275. For a
temporary injury, the cause of action accrues when each separate injury occurs. Bates, 147 S.W.3d
at 270; Pluff, 94 S.W.3d at 27. Because when the accrual of a cause of action differs depending on
whether an injury is permanent or temporary, the distinction between a temporary and permanent
injury can be relevant to standing. A landowner may have standing if the injury is temporary and
a new injury has occurred since the landowner has acquired the property. The reason a subsequent
landowner lacks standing for injuries before his or her ownership is because the prior landowner was
the party who was actually harmed by the prior injury. The injury to land will affect the price the
prior landowner was able to obtain for the land and, therefore, the cause of action belongs to the prior
landowner. If an injury is temporary, the prior landowner is not harmed by an injury which has yet
to occur when the property is sold. A cause of action for temporary injury to land "does not lie for
anticipated future damages that have not yet occurred, but accrues at the time land is actually
damaged." Allen v. City of Tex. City, 775 S.W.2d 863, 866 (Tex. App.—Houston [1st Dist.] 1989,
writ denied). Because temporary injuries are difficult to predict, the sale price of the property will
not be affected by future temporary injuries. Therefore, it is the current landowner who is harmed
by new temporary injuries.
            In Cook, Denman, Pluff, and Senn, plaintiffs alleged no new injuries for which the causes of
action accrued after they purchased the properties. See Cook, 145 S.W.3d at 784; Denman, 123
S.W.3d at 734; Pluff, 94 S.W.3d at 24; Senn, 55 S.W.3d at 226. Further, the prior appeal brought
by the Denmans involved defendants who had ceased operations on the property in question. See
Denman, 123 S.W.3d at 734. In this suit, the defendant is the current operator and new injuries have
been alleged.
            The Denmans' alleged injuries include damage to their tractor and farm equipment from
coming in contact with oil and gas production equipment; unreasonable and unnecessary use of the
surface by SND since the Denmans have owned the property; discharge of hydrocarbons and/or toxic
materials on the property since the Denmans have owned the property; inability to clear, cultivate,
plant, or build on the property; and an inability to obtain financing on the property or use the property
as collateral.
            The Denmans complain of discarded concrete pillars, deadmans,


 and asbestos-covered
pipelines on their land, as well as contamination of their soil. According to the Denmans, the
discarded oil field equipment constitutes unreasonable and unnecessary surface use by SND, has
prevented the Denmans from clearing, cultivating, planting, and building on the property, and has
prevented the Denmans from obtaining financing on the property or using the property as collateral. 
The Denmans contend these injuries are temporary injuries for which they are personally aggrieved.


 
The Denmans also argue that the discarded equipment amounts to trespassing.


 Under the Texas
Supreme Court's opinion in Bates, the pipelines, other equipment, and improperly plugged wells, as
well as any contamination of the soil resulting therefrom, are permanent injuries as a matter of law. 
See Bates, 147 S.W.3d at 272; West v. Benntagg, 168 S.W.3d 327, 336 n.9 (Tex. App.—Texarkana
2005, no pet.). These injuries are always present and the contamination is consistent. An injury is
permanent if it "constantly and regularly occurs." Bates, 147 S.W.3d at 272. Further, these injuries
occurred before the Denmans purchased the land. Therefore, the Denmans lack standing to pursue
these claims. While this rule may seem harsh, the Denmans could have insisted on warranties from
the sellers regarding condition of the land and water, or they could have performed a better
inspection of the land and water before they purchased the property.
            The Denmans alleged and presented some evidence that oil and salt water have been allowed
to leak onto the land and wash into a nearby creek. The Denmans' evidence consists of affidavits
by the Denmans' expert, the Denmans' depositions, photographs of the property, and inspection
records from the Texas Railroad Commission indicating violations of Commission rules. This
evidence suggests there have been several oil spills since SND took over operations. These oil spills
were purportedly caused by leaks, a ruptured storage tank, and an uncovered overflow tank which
runs over when it rains. Because causes of action for these injuries may have accrued since the
Denmans purchased the property,


 they have standing to pursue these claims.
            The Denmans also allege violations of the Railroad Commission Rules.


 But the only injury
so alleged, which we have not yet addressed, is that some of the Denmans' farm equipment was
damaged from hitting unmarked pipelines. The Denmans argue that SND has a statutory duty to
mark the pipelines and that its negligence in failing to mark the pipelines caused damage to their
farm equipment. Based on the facts alleged and assuming that SND does have a statutory duty to
mark the equipment as alleged, damage to the farm equipment as alleged would be a new injury for
which a cause of action has accrued since the Denmans purchased the property.



            Although the Denmans lack standing for the majority of their allegations, including the
unused pipelines and other equipment, they do have standing to complain of discharges of
hydrocarbons and for damages to their farm equipment that have occurred since their purchase of
the property. Therefore, the trial court erred in granting the plea to the jurisdiction as to those claims.
(3)       The Denmans Did Not State a Claim Under Section 85.322 of the Texas Natural Resources
Code
            The Denmans also argue they have standing because they "may sue" under Section 85.321
of the Texas Natural Resources Code. The Denmans argue that Section 85.321 gives them an
independent cause of action for which they have standing to sue. In addition, the Denmans argue
the fact that the Railroad Commission has regulatory authority does not prevent them from suing
based on violations of Texas statutory law.



            Section 85.321 provides for a private cause of action when a person is damaged by a
violation of certain provisions of Chapter 85 or a rule of the Railroad Commission. Section 85.321
provides:
A party who owns an interest in property or production that may be damaged by
another party violating the provisions of this chapter that were formerly a part of
Chapter 26, Acts of the 42nd Legislature, 1st Called Session, 1931, as amended, or
another law of this state prohibiting waste or a valid rule or order of the commission
may sue for and recover damages and have any other relief to which he may be
entitled at law or in equity. Provided, however, that in any action brought under this
section or otherwise, alleging waste to have been caused by an act or omission of a
lease owner or operator, it shall be a defense that the lease owner or operator was
acting as a reasonably prudent operator would act under the same or similar facts and
circumstances.

Tex. Nat. Res. Code Ann. § 85.321 (Vernon 2001). The Texas Supreme Court has stated: "[w]hen
a mineral or royalty interest is damaged by a violation of the conservation laws of this state or a
Railroad Commission rule or order, section 85.321 of the Texas Natural Resources Code also
expressly provides for a damage suit against the offending operator." HECI Exploration Co. v. Neel,
982 S.W.2d 881, 890 (Tex. 1998); cf. Emerald Oil & Gas, L.C. v. Exxon Corp., No. 13-99-757-CV,
2005 Tex. App. LEXIS 591, at *11 (Tex. App.—Corpus Christi Jan. 27, 2005, no pet.) (not
designated for publication); Arkla Exploration Co. v. Rice, No. 06-92-00098-CV, 1993 Tex. App.
2229, at *11 (Tex. App.—Texarkana Aug. 10, 1993, writ dism'd by agr.) (not designated for
publication).
            The problem with the Denmans' argument is they failed to assert this cause of action as a
basis for recovery. A cause of action under Section 85.321 is not pled in their original petition or
any of their amended petitions. Further, the Denmans have not directed us to where they asserted
a cause of action under Section 85.321. In their supplemental response to the defendants' motions
to dismiss and plea to the jurisdiction, the Denmans state:
Denman, as the surface owners, may sue the Defendants for damages as well as other
relief, whether at law or equity, for damages to the Denman property, where the
Defendants violated the Texas Natural Resources Code, or another law of the State
of Texas prohibiting waste or a valid Rule or Order of the RRC. See §85.321 and
§85.322 of the Texas Natural Resources Code.

There is a difference between alleging that you have the right to sue and actually asserting that cause
of action. The mere assertion that a party has the right to sue fails to give fair notice to the
defendants that the party is asserting a cause of action based on that right to sue. Because the
Denmans failed to plead a cause of action under Section 85.321, it is not necessary to determine if
they have standing under that section or whether they alleged facts which would provide a cause of
action under that section.
(4)       The Texas Litter Abatement Act Does Not Apply
            In their fifth point of error, the Denmans argue the trial court erred in granting SND's motion
for summary judgment concerning their claim under the Texas Litter Abatement Act. SND filed a
traditional summary judgment motion, arguing that the Texas Litter Abatement Act excludes solid
waste resulting from oil and gas exploration and production. We agree.



 
            The Denmans argue that SND has violated Section 365.012(a) of the Texas Health and Safety
Code. That section provides that "[a] person commits an offense if the person disposes or allows
or permits the disposal of litter or other solid waste at a place that is not an approved solid waste site,
including  .  .  .  on  other  public  or  private  property  .  .  .  ."  Tex.  Health  &  Safety  Code
Ann. § 365.012(a) (Vernon Supp. 2004–2005). 
            To prevail under the Texas Litter Abatement Act, the Denmans were required to prove SND
disposed of "litter" or "solid waste" on their land as defined by the Act. "Litter" is defined in Section
361.011(6) as
(A) decayable waste from a public or private establishment, residence, or restaurant,
including animal and vegetable waste material from a market or storage facility
handling or storing produce or other food products, or the handling, preparation,
cooking, or consumption of food, but not including sewage, body wastes, or
industrial by-products; or
(B) nondecayable solid waste, except ashes, that consists of:
 (i) combustible waste material, including paper, rags, cartons, wood, excelsior,
furniture, rubber, plastics, yard trimmings, leaves, or similar materials;
 (ii) noncombustible waste material, including glass, crockery, tin or aluminum
cans, metal furniture, and similar materials that do not burn at ordinary incinerator
temperatures of 1800 degrees Fahrenheit or less; and
 (iii) discarded or worn-out manufactured materials and machinery, including
motor vehicles and parts of motor vehicles, tires, aircraft, farm implements, building
or construction materials, appliances, and scrap metal.

Tex. Health & Safety Code Ann. § 365.011(6) (Vernon 2001). The pipelines and other
complained-of waste are clearly not "decayable waste" under Section 365.011(6)(A) and, therefore,
must be "nondecayable solid waste" under Section 365.011(6)(B) in order for the Texas Litter
Abatement Act to apply. The Litter Abatement Act specifies that "'Solid waste' has the meaning
assigned by Section 361.003." Tex. Health & Safety Code Ann. § 365.011(9) (Vernon 2001). 
Section 361.003 specifically excludes waste resulting from oil and gas exploration and production. 
See Tex. Health & Safety Code Ann. §§ 361.003(34), 361.003(35) (Vernon 2001). Because the
waste complained of originated from oil and gas production, the waste is exempt from the Texas
Litter Abatement Act.
            The Denmans argue that the exception for oil and gas exploration and production does not
apply because their claims are not confined to pollution of surface water or subsurface water. The
exception contained in Section 361.003 applies to "waste materials that result from activities
associated with the exploration, development, or production of oil or gas or geothermal resources
and other substance or material regulated by the Railroad Commission of Texas under Section
91.101, Natural Resources Code . . . ." Tex. Health & Safety Code Ann. §§ 361.003(34)(iii),
361.003(35)(iii) (Vernon 2001). The Denmans contend that, since the stated purpose of Section
91.101 of the Texas Natural Resources Code is to "prevent pollution of surface water or subsurface
water in the state," the exception applies only to claims alleging pollution to surface or subsurface
water. Tex. Nat. Res. Code Ann. 91.101 (Vernon Supp. 2004–2005). While the Denmans are
alleging the surface and subsurface water has been polluted, they also complain about unused oil
field equipment on their land. According to the Denmans, the exception does not apply to unused
oil equipment. We are not persuaded by this argument. First, Section 91.101 cited by the Denmans,
does not state the purpose of the statute, but rather only authorizes the Texas Railroad Commission 
to issue rules to regulate pollution of surface and subsurface waters. See id. Second, even if the
purpose of the statute is to prevent pollution, we should not interpret a statute differently from the
plain language contained therein unless the plain language yields an absurd result. Fleming Foods
of Tex., Inc. v. Rylander, 6 S.W.3d 278, 282 (Tex. 1999). We are not persuaded by the Denmans'
argument. Because the Texas Litter Abatement Act specifically exempts waste from oil and gas
production, we affirm the trial court's summary judgment on that issue.



Conclusion
            We affirm the trial court's judgment in part and reverse in part. The notice of appeal was
timely filed under the mailbox rule. The Denmans have standing to sue for injuries for which a
cause of action has accrued while they have owned the property. Although the Denmans lack
standing for the majority of their allegations


—as to which we affirm the trial court's dismissal—the
Denmans do have standing to sue for discharges of hydrocarbons and for damages to their farm
equipment occurring during their ownership—as to which we reverse and remand for further
proceedings. Because the Denmans failed to plead any cause of action under Section 85.321, it is
not necessary to determine whether they have standing under that cause of action or whether the facts
alleged are sufficient to constitute a cause of action under that section. Finally, we affirm the
summary judgment concerning the Texas Litter Abatement Act. For the reasons stated, we reverse
the judgment of the trial court and remand for further proceedings consistent with this opinion.


                                                                                    Josh R. Morriss, III
                                                                                    Chief Justice

Date Submitted:          June 16, 2005
Date Decided:             September 23, 2005